469 So.2d 1384 (1985)
Joseph ROBBIE, et al., Petitioners,
v.
CITY OF MIAMI, Respondent.
No. 66039.
Supreme Court of Florida.
May 23, 1985.
*1385 Robert L. Shevin of Sparber, Shevin, Shapo and Heilbronner, Miami, for petitioners.
Lucia A. Dougherty, City Atty., and Gisela Cardonne, Deputy City Atty., Miami, for respondent.
McDONALD, Justice.
We have for review City of Miami v. Robbie, 454 So.2d 606 (Fla. 3d DCA 1984), because of conflict with Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp., 302 So.2d 404 (Fla. 1974). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We quash the district court's decision.
Due to the professional football players' strike in 1982, the Miami Dolphins did not play the contracted number of games in the city-owned Orange Bowl. The City of Miami sued to collect rent for the games not played and received a summary judgment on the issue of liability. Trial was set to determine the amount of damages, but prior to trial the parties reached a proposed settlement, and the trial was cancelled. Documents were prepared, but a discord arose between the parties as to a provision in the settlement. The parties agreed, basically, that the Dolphins will play an extra game in both 1985 and 1986, but, if either extra game is not played "for any reason" the Dolphins will pay $30,000 per game. The original contract excuses the Dolphins from the rent obligation if any of the nine scheduled games are not played due to an "Act of God."
The Dolphins contend they also need not pay the $30,000 if the tenth game is not played due to an Act of God. The city, in preparing the settlement contract, included an amendment to the Act of God provision that requires the Dolphins to pay the $30,000 if an Act of God causes cancellation of the tenth game. The Dolphins filed suit to enforce the settlement but for the amendment to the Act of God provision. The trial court found an enforceable settlement agreement. The district court reversed, finding the provision in dispute to be an essential element of the settlement agreement and that the parties had reached no subjective meeting of the minds as to the agreement's terms.
We have consistently held that an objective test is used to determine whether a contract is enforceable. Blackhawk (and cases cited therein). As stated in Blackhawk:
"The making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs  not on the parties having meant the same thing but on their having said the same thing."
302 So.2d at 407, quoting Gendzier v. Bielecki, 97 So.2d 604, 608 (Fla. 1957). In addition, parties to a contract do not have to deal with every contingency in order to have an enforceable contract. See Blackhawk.
Settlements, of course, are governed by the rules for interpretation of contracts. Dorson v. Dorson, 393 So.2d 632 (Fla. 4th DCA 1981). Additionally, settlements are highly favored and will be enforced whenever possible. See Pearson v. Ecological Science Corp., 522 F.2d 171 (5th Cir.1975), cert. denied, 425 U.S. 912, 96 S.Ct. 1508, 47 L.Ed.2d 762 (1976); Dorson.
In the case sub judice the disagreement over the application of the Act of God provision to the tenth game was a mere contingency. It was not, as the district court below determined, an essential element of the contract. The essential terms *1386 of the settlement are, as Judge Jorgenson correctly states in his dissent to the district court's decision, that two extra games will be played or $30,000 per unplayed game will be due; the Dolphins will increase their public liability insurance; and the Dolphins will defend certain third party claims against the city. As to these terms there was no disagreement. All the documents prepared and the transcripts of the city commission meeting are in accord on the essential elements. Therefore, under Blackhawk, the parties have said the same thing as to the essential elements, and the settlement should be enforced. In the unlikely event that an Act of God prevents the tenth game from being played in 1985 or 1986, the parties can litigate whether the Dolphins are liable for $30,000 a game at that time.
The district court improperly relied on Gaines v. Nortrust Realty Management, Inc., 422 So.2d 1037 (Fla. 3d DCA 1982). In Gaines there was absolutely no objective evidence to enable the court to discover the terms of the settlement. In the present case, on the other hand, the court had before it the transcripts of the commission meeting, a lengthy resolution by the commission adopting the settlement and stating its terms, a stipulation and order prepared by the city, releases, and letters acknowledging the settlement. Therefore, we adopt Judge Jorgenson's dissent.
Accordingly, the decision of the district court is quashed with orders to reinstate the decision of the trial court.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, ALDERMAN, EHRLICH and SHAW, JJ., concur.