783 So.2d 1115 (2001)
Solanje CHEVERIE, Individually and as Personal Representative of the Estate of Carroll Cheverie, Jr., Deceased, Appellant,
v.
Marshall GEISSER, Appellee.
No. 4D00-485.
District Court of Appeal of Florida, Fourth District.
March 14, 2001.
Rehearing Denied May 17, 2001.
*1116 Larry Moskowitz of Larry Moskowitz, P.A., Fort Lauderdale, for appellant.
Richard A. Sherman and Rosemary B. Wilder of Law Offices of Richard A. Sherman, P.A., Fort Lauderdale, and John E. Donahoe of Donahoe, Pecaro & Vollender, P.A., Fort Lauderdale, for appellee.
PER CURIAM.
In this wrongful death action arising out of an automobile accident, Solanje Cheverie, the plaintiff below, appeals the order dismissing her complaint. The trial court dismissed the complaint upon determining that the parties had reached a binding settlement agreement before plaintiff filed suit. We reverse, because the evidence fails to support a finding that there was a meeting of the minds between the parties as to every essential element.
Plaintiffs husband, Carroll Cheverie, died on November 7, 1998 as a result of injuries he sustained when the defendant, Marshall Geisser, collided with his automobile on July 28, 1998.
After several months of written communication between plaintiffs counsel and the defendant's insurance adjuster (Allstate), plaintiff brought this wrongful death action. The defendant filed a counterclaim for declaratory relief, asserting that the parties had reached a settlement agreement for the defendant's insurance policy limits during their pre-suit negotiations. The plaintiff contended that there was no valid settlement agreement because there was no meeting of the minds on two essential terms: (1) indemnification language in *1117 the release proposed by Allstate; and (2) production of the policy limits affidavit.
Before trial on the wrongful death claim, the parties agreed to waive a jury trial on the counterclaim and have the court decide the settlement issue. The court ruled that there was an enforceable settlement agreement and dismissed the complaint. The court's finding of a settlement was based upon a series of letters between the defendant's insurance adjuster and the plaintiff's attorney. Below is a chronology of their correspondence:
1. On August 11, 1998, Cheverie's first attorney wrote to Allstate, advising that he represented Cheverie on her claim regarding her husband's accident.
2. On August 26, 1998, Allstate's claims adjuster wrote to Cheverie's counsel indicating Allstate's willingness to tender the bodily injury liability policy limits of $100,000.00 to settle the claim; the letter acknowledged that Cheverie would be "conducting additional investigation" and possibly establishing a guardianship before considering acceptance of the policy limits. The letter also stated that there was a hospital lien on any settlement proceeds and that Allstate was "required to protect the hospital's lien by placing their name on the settlement check."
3. On January 27, 1999, Cheverie's new counsel wrote to Allstate, requesting copies of correspondence and policy information as required by Florida Statute section 627.4137.
4. On March 12, 1999, Cheverie's counsel wrote to Allstate: (a) explaining that there was no hospital lien against the proceeds because the husband had full health insurance available to pay the hospital and they were not making a claim for medical benefits; (b) stating that he considered Allstate's August 26th offer "in reality, a counteroffer and in bad faith" because Allstate had added several conditions to the tender that were unacceptable; and (c) demanding immediate unconditional tender of the $100,000 policy limits by draft payable to "Solanje Cheverie and Larry Moskowitz, her attorney," by no later than noon, Friday, March 19, 1999, along with an affidavit of the defendant's limits.
5. On March 17, 1999, Allstate sent Cheverie's counsel a check for $100,000, along with a release containing indemnification language to be executed and returned to Allstate.
6. On March 18, 1999, Cheverie's counsel returned the check to Allstate, objecting that Allstate had made it payable to the plaintiff, as personal representative of her husband's estate rather than payable to the plaintiff and her counsel. He also objected to the indemnification and hold harmless clause in the general release and to Allstate's failure to provide the affidavit of policy limits. Cheverie's counsel demanded that Allstate tender the policy limits of $100,000 without condition, and the check be made payable to "Solanje Cheverie and Larry Moskowitz, her attorney," no later than noon, March 24, 1999, along with the affidavit of the defendant's policy limits. The letter provided that "upon receipt we will forward to you a general release from my client."
7. On March 24, 1999, Allstate wrote to Cheverie's counsel, enclosing the settlement check for $100,000, along with case law requiring it to include the personal representative of an estate on a settlement check in a wrongful death action. The letter *1118 did not respond to objections to the indemnification requirements but it did not include a release. The letter did not include the affidavit of liability policy limits.
8. On March 29, 1999, Cheverie's counsel returned the settlement check to Allstate, informing Allstate that he agreed with Allstate regarding the named payees on the check but that he still objected to the indemnification language and Allstate's failure to supply an insurance limits affidavit.
9. On March 31, 1999, Allstate wrote Cheverie's counsel informing him that the check was being sent by courier and that he was free to strike out any portion of the General Release that he found objectionable. The letter further advised that insurance policies are not kept locally but that the policy declarations had been ordered. It added that if it was later determined that there was greater coverage the plaintiff would not be bound by the settlement agreement, even if she cashed the check.
10. On March 31, 1999, Cheverie's counsel wrote to Allstate advising it not to send the check as a lawsuit had already been filed.
At the bench trial on the counterclaim, the court heard testimony from the defendant's adjuster and plaintiff's counsel. The adjuster conceded that Allstate did not provide the policy information requested by plaintiff's counsel until several weeks after suit was filed. She further acknowledged that she was aware that the plaintiffs attorney had rejected the indemnification language in the release and had refused to accept the release as presented. She also testified that the release was never signed or returned to her.
Plaintiff's counsel explained that it was his standard practice to obtain the policy information prior to accepting any settlement and that, to the best of his knowledge, such was the standard practice of most personal injury attorneys in Broward County. He also explained that his objections to the indemnification language in the proposed release were based on the extensive medical bills and potential exposure of his client to a third party claim.
Following trial, the court concluded that the March 18th letter from Cheverie's attorney was an offer to settle, and the March 24th letter from Allstate, mailed without a release and enclosing a check for the policy limits, was an acceptance of that offer. The court determined that both the signing of the release and the confirmation of the policy limits were merely procedural matters, not part of the settlement agreement. Accordingly, the trial court held that the settlement agreement was enforceable and that the plaintiff was compelled to accept the $100,000 policy limits and execute all the necessary documents. A final declaratory judgment for defendant was entered.
Settlement agreements are interpreted and governed by contract law. Robbie v. City of Miami, 469 So.2d 1384 (Fla.1985); Woodfield Plaza, Ltd. v. Stiles Constr. Co., 687 So.2d 856, 857 (Fla. 4th DCA 1997); Dorson v. Dorson, 393 So.2d 632 (Fla. 4th DCA 1981). Preliminary negotiations or tentative and incomplete agreements do not establish a sufficient meeting of the minds to create an enforceable settlement agreement. To be judicially enforceable, a settlement "must be sufficiently specific and mutually agreeable as to every essential element." Grimsley v. Inverrary Resort Hotel, Ltd., 748 So.2d 299, 301 (Fla. 4th DCA 1999) (quoting Williams v. Ingram, 605 So.2d 890, 893 (Fla. 1st DCA 1992)).
*1119 Although the law favors settlement agreements and their enforcement whenever possible, the evidence must clearly demonstrate that there was mutual agreement to the material settlement terms. See Robbie, 469 So.2d at 1385; Carroll v. Carroll, 532 So.2d 1109 (Fla. 4th DCA 1988). "The making of a contract depends not on the agreement of two minds in one intention but on the agreement of two sets of external signs." Robbie, 469 So.2d at 1385. A trial court's finding of a meeting of the minds must be supported by competent substantial evidence. See Roggio-Wilgus v. Marlin, 699 So.2d 1050 (Fla. 4th DCA 1997). The burden is on the "party seeking judgment on the basis of compromise and settlement" to establish assent by the opposing party. Nehleber v. Anzalone, 345 So.2d 822 (Fla. 4th DCA 1977).
Generally, the acceptance of an offer which results in a contract must be absolute and unconditional, identical with the terms of the offer, and in the mode, at the place, and within the time expressly or impliedly stated within the offer. Thus, `[an] acceptance must contain an assent to the same matters contained in the offer.' Lickert v. Pike, 736 So.2d 724 (Fla. 2d DCA 1999)(citing Mintzberg v. Golestaneh, 390 So.2d 759 (Fla. 3d DCA 1980)).
Here, there was no evidence of acceptance on two crucial terms. First, plaintiff did not agree to the indemnification language in the release defendant presented for her execution. Plaintiff immediately raised an objection to the proposed release after receiving it and demanded its removal. However, this issue was not resolved before suit was filed. Where the language of a release is disputed and the parties fail to reach an agreement as to the character, nature, or type of release to be used, an essential element of the agreement is not established. See Grimsley, 748 So.2d 299; Woodfield Plaza, 687 So.2d 856; Long Term Mgmt., Inc., v. Univ. Nursing Care Ctr., Inc., 704 So.2d 669 (Fla. 1st DCA 1997); Bateski v. Ransom, 658 So.2d 630 (Fla. 2d DCA 1995); Gaines v. Nortrust Realty Mgmt., Inc., 422 So.2d 1037 (Fla. 3d DCA 1982). See also Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co., 761 So.2d 306 (Fla.2000) (specific language in a release is crucial in determining the ultimate rights and potential liabilities of the parties).
Second, through repeated demands for the policy affidavit, plaintiff made it clear that production of this item was a necessary and essential element of any settlement acceptance. However, defendant did not provide this statutorily mandated affidavit until two months after suit was filed. We do not agree with defendant's characterization of compliance with Florida Statute section 627.4137 as a mere "technicality."[1] On the contrary, by enacting this statute, the legislature recognized the importance of a claimant's access to this type of information in making settlement decisions.
*1120 In sum, we conclude that there is no substantial competent evidence to support the trial court's finding that the parties reached a settlement of all of the essential terms. We therefore reverse the order dismissing the complaint and remand this cause for further proceedings.
REVERSED and REMANDED.
WARNER, C.J., TAYLOR, J., and LENDERMAN, JOHN C., Associate Judge, concur.
NOTES
[1] Section 627.4137, Florida Statutes, provides:

(1) Each insurer which does or may provide liability insurance coverage to pay all or portion of any claim which might be made shall provide, within 30 days of the written request of the claimant, a statement, under oath, of a corporate officer or the insurer's claims manager or superintendent setting forth the following information with regard to each known policy of insurance, including excess or umbrella insurance:
(a) The name of the insurer.
(b) The name of each insured.
(c) The limits of liability coverage.
(d) A statement of any policy or coverage defense which such insurer reasonably believes is available to such insurer at the time of filing such statement.
(e) A copy of the policy.