832 So.2d 179 (2002)
Theresa SCHLOSSER, as mother and legal guardian of Sarah Hall, Appellant,
v.
Oscar PEREZ, Appellee.
Nos. 2D01-5670, 2D01-5680.
District Court of Appeal of Florida, Second District.
November 15, 2002.
*180 Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami; and Wagner, Vaughn & McLaughlin, P.A., Tampa, for Appellant.
Tracy Raffles Gunn of Fowler White Boggs Banker P.A., Tampa; and Daniel F. Pilka of Pilka & Associates, P.A., Brandon, for Appellee.
STRINGER, Judge.
Theresa Schlosser, as mother and legal guardian of Sarah Hall, seeks review of (1) the trial court's order granting Oscar Perez's motion to enforce a settlement agreement and (2) the final judgment requiring Schlosser to accept $10,000 from Perez pursuant to that agreement. Schlosser argues that the trial court erred in holding that the parties had reached an enforceable settlement agreement and seeks an opportunity to go to trial to pursue her negligence action against Perez. Because the trial court erred in finding that there was a meeting of the minds between the parties as to every essential element of the agreement, we reverse.
The facts are not in dispute. On July 31, 2000, Schlosser's minor daughter, Sarah Hall, was injured in a collision with an automobile driven by Perez. On May 23, 2001, Schlosser's attorney sent a settlement offer to Mark Webber, the claims representative for the Vision Insurance Group (Vision), managing general agent for Modern Service Insurance Company, Perez's insurer. The offer stated:

I request within thirty (30) days of the date of this letter all the information required by Florida Statute 627.4137.[1] A copy is enclosed for your convenience. We will gladly provide you with an authorization form so that you can obtain all the records from Lee Memorial Hospital and HealthSouth in Sarasota. If you request those, please send me a request and I will provide you with an authorization form. If my understanding is correct regarding the policies governing your insured, we will accept a check for the policy limits of all applicable policies, which must be made payable to the trust account of Wagner, Vaughan & McLaughlin, P.A. for the benefit of Sarah Hall. In addition, I require that the above information and check must be tendered at my office within 30 days of the date of this letter (or on or before June 22, 2001) at 5:00 p.m. Please understand that this settlement offer is intended to be an offer for a unilateral contract which will be accepted *181 only by strict performance and not a promise to perform by you and/or your insureds, or substantial performance or partial performance by you and/or your insureds. In return for strict compliance with the above, my client's mother (as guardian and mother) will execute a general release in favor of your insurance carrier and your insured. Disbursement of the check may be conditioned upon the delivery of a general release in favor of your carrier and the insured. My clients will accept responsibility to satisfy all valid liens against the settlement funds out of the delivery of the settlement funds. This release may not be conditioned upon my clients executing any hold harmless or indemnity agreement in favor of your carrier or the insureds. Therefore, we will not accept a release which contains hold harmless or indemnity agreements, as not being in strict compliance with our offer.
(Emphasis added.) A copy of the offer was also sent to Perez, but Perez could not remember if he had received it.
On June 15, 2001, Schlosser's attorney received a letter from Webber reading in pertinent part:
Enclosed you will find the Release of All Claims Agreement along with our check in the amount of $10,000.00.
As you have provided no supporting documentation, please have the enclosed Medical Authorization release signed and provide the name and address of the medical facility so that we may obtain the documentation which supports the claim.
Please hold our check in escrow until the release has been properly executed and returned to this office.
On June 18, 2001, Schlosser's attorney sent Webber a letter advising that the medical authorization release would be forthcoming. On June 20, 2001, Schlosser's attorney received a disclosure of insurance policy limits letter from Vision providing the name of the insurer, Modern Service Insurance Company; the name of the insured, Oscar Perez; the limits of liability coverage, $10,000; a statement that no coverage defenses were "known at this time"; and a copy of the policy. However, Vision provided neither a disclosure of any other insurer or any other coverage for Perez nor a disclaimer of such insurer or coverage.
Schlosser's attorney immediately responded by letter, which included the following:
I have forwarded the information to Mrs. Schlosser as I indicated to you, and I will be contacting Mrs. Schlosser today to make sure she received your authorization forms, fills them out, and returns them to you. We have your check, and I look forward to receiving the requested statement of Mr. Perez or his insurance agent by this Friday. Assuming the above requested information is timely received, we will have what we need in order to have a settlement agreement with you and your insured. At that time, I will move forward to process the settlement documents.
(Emphasis added.) Schlosser's attorney never received the statement from Perez or his insurance agent, and on July 2, 2001, he wrote Webber the following:
Thank you for all your efforts in attempting to provide all the information I requested initially on May 23, 2001, and most recently in my correspondence dated June 20, 2001. It is apparent that you have done everything within your power, however, for reasons only you know best, your insured is refusing to provide the statement required under Section 627.4137, Florida Statutes. *182 It has been my experience that when people refuse to do this, it indicates they have something to hide. It's hard to guess what might be on Mr. Perez's mind, but maybe it is some umbrella policy, or some coverage relating to a non-record owner, or employer, or other person with derivative liability. Please inform Mr. Perez that whatever the secret is, it is going to be impossible to maintain it in litigation, which is exactly where the refusal to provide the statement has now forced us.

Enclosed is your check you previously forwarded to me, along with a courtesy copy of the Complaint, Request to Produce, Request for Admissions, Interrogatories and Notice of Taking Deposition directly intended to get to the bottom of this question in connection with the lawsuit. I will let you know when Service of Process has been obtained, and look forward to working with you on this discovery.
(Emphasis added.) Schlosser filed suit on July 5, 2001. Perez moved to enforce the settlement agreement, contending that as a matter of law, a settlement had been reached. The trial court granted Perez's motion and entered a final judgment requiring Schlosser to "take $10,000.00 from Defendant, OSCAR PEREZ, in exchange for signing a Release." Schlosser appealed, arguing that the trial court erred in holding that the parties had reached an enforceable settlement agreement.
Settlement agreements are governed by contract law. Robbie v. City of Miami, 469 So.2d 1384, 1385 (Fla.1985). Although settlement agreements are favored by the law, there must be a meeting of the minds as to the essential settlement terms in order for settlement agreements to be enforceable. Id.; Giovo v. McDonald, 791 So.2d 38, 40 (Fla. 2d DCA 2001), review denied, 817 So.2d 848 (Fla. 2002). Generally, an acceptance of an offer must be unconditional and identical with the terms of the offer. Giovo, 791 So.2d at 40; Cheverie v. Geisser, 783 So.2d 1115, 1119 (Fla. 4th DCA), review denied, 805 So.2d 806 (Fla.2001). In this case, the trial court recognized that Schlosser's offer was not accepted on its terms but concluded that "[t]hose matters that were not met were of insignificant importance and did not have anything to do with the real basis of this settlement and should not be a basis to deny enforcement of the settlement." The term at issue in this case is the requirement that Perez or his insurer disclose the name and coverage of each of his insurers in compliance with section 627.4137. It is undisputed that neither Perez nor his insurer made the requested insurance disclosure.
This case is analogous to Cheverie. There, as in this case, the plaintiff had requested the disclosure of the insured's coverage as set forth in section 627.4137 in an offer to settle for policy limits. 783 So.2d at 1117. The insurer tendered a check for the policy limits, but failed to send the requested insurance disclosure. The plaintiff subsequently returned the check to the insurer based on its failure to send the insurance disclosure and the indemnification language in the general release. The plaintiff demanded that the insurer tender the policy limits "without condition." The insurer again remitted a check for the policy limits, but did not respond to the plaintiff's objections. Again, the plaintiff returned the check to the insurer again informing the insurer of his objections. Id. at 1118.
The insurer re-sent the check for the policy limits and told the plaintiff that he was free to strike any objectionable language in the release and advised that the policy declarations had been ordered. The letter added that, if it was later discovered *183 that there was greater coverage, the plaintiff would not be bound by the settlement. The plaintiff responded that suit had already been filed.
The trial court subsequently dismissed the complaint, finding that the parties had reached an enforceable settlement agreement. Id. at 1116. The Fourth District reversed, holding that an enforceable settlement agreement had not been reached because there was no meeting of the minds. Id. at 1119. The court found that there was no evidence of acceptance on the two essential terms regarding the indemnification language and the requested insurance disclosure. The court further found that the plaintiff's repeated demands for the insurance disclosure indicated that the production of the disclosure was an essential element of an acceptance. The court rejected the insured's argument that the insurance disclosure, as required by section 627.4137, was a "mere `technicality.'" The court reasoned that "by enacting this statute, the legislature recognized the importance of a claimant's access to this type of information in making settlement decisions." Id.
The disclosure request in Cheverie is identical to that in the offer in this case with the exception that the offer in this case did not expressly request the insurance disclosure. Instead, the offer stated, "I request within thirty (30) days of the date of this letter all the information required by Florida Statute 627.4137." Attached to the offer was a copy of section 627.4137, which provides, in part, that "the insured, or her or his insurance agent, upon written request of the claimant or the claimant's attorney, shall disclose the name and coverage of each known insurer to the claimant." This express reference to section 627.4137 negates Perez's argument that Schlosser's offer did not actually request disclosure of each of his known insurers.
Similarly, Perez's argument that he could not have complied because he did not actually receive the request has no merit. Schlosser made the request for disclosure to Perez's insurer in his offer as permitted by section 627.4137, which allows the request to be made to "the insured, or her or his insurance agent." Thus, it is of no moment whether Perez actually received his copy of the offer. Like the plaintiff in Cheverie. Schlosser made it clear that the insurance disclosure was an essential term of the offer by including it in the offer and returning the settlement check because that term was not met. Even if Schlosser had not expressed her objections to the offer, the insurance disclosure is an essential term under Cheverie. Because Perez failed to provide the disclosure, his acceptance was not identical to the essential terms of the offer. Accordingly, the trial court erred in holding that the settlement agreement was enforceable. We therefore reverse and remand for further proceedings.
Reversed and remanded.
WHATLEY and KELLY, JJ., Concur.
NOTES
[1] Section 627.4137(1), Florida Statutes (2000), provides that, upon request by a claimant, a liability insurer shall provide a statement, under oath, setting forth certain information regarding each known policy of insurance. That information consists of the insurer's name, each insured's name, the limits of the liability coverage, a statement of any defense the insurer reasonably believes is available at that time, and a copy of the policy. In addition, the insured, or his insurance agent, "shall disclose the name and coverage of each known insurer to the claimant."