VAN NORTWICK, J.
 

 Samuel M. Hanson, Cecil Hanson and Rebecca Hanson appeal an adverse final judgment in the negligence action filed by Jamie Maxfield, appellee, arising out of a motor vehicle accident in which a motorcycle driven by Darin Bryan, on which Max-field was a passenger, collided with an automobile driven by Samuel Hanson when Hanson turned in front of the motorcycle. The Hansons argue that the trial court erred in denying their motion for summary judgment since the parties had entered into a settlement agreement prior to the suit. We agree. Reading the documents that the Hansons assert comprise the settlement agreement, we conclude that the parties did enter into an enforceable settlement agreement. In view of our holding, it is not necessary to reach Max-field’s cross-appeal, which argues that the trial court erred in failing to enter a directed verdict on Bryan’s comparative negligence.
 

 Maxfield filed suit against Samuel Hanson and his parents, who owned the vehicle he was driving at the time of the accident, alleging that the accident was caused by Samuel Hanson’s negligent maintenance or operation of the Hanson automobile. The Hansons answered and, as one of several affirmative defenses, alleged that the parties had entered into a binding settlement agreement prior to the suit. The trial court denied the Hansons’ motion for summary judgment on this affirmative defense, and the case proceeded to trial. The jury returned a verdict finding that Hanson was 70% at fault for the accident and that Bryan was 30% at fault.
 

 The settlement agreement between the parties comprises two letters exchanged between the parties’ attorneys. By a letter dated April 15, 2005, Maxfield’s trial counsel made an offer of settlement on her behalf which provided, in pertinent part, as follows:
 

 I believe my clients are both in a position now to accept the policy limits to release both Samuel Hanson and Cecil Hanson of all claims arising from the automobile collision that occurred on June 12th of 2004.
 

 However, because of the unanswered questions about the potential coverage under the Allstate CGL policy issued to Bob and Betty Abbott d/b/a Betty’s Pizza, and other insurance potentially available to them and others who may be responsible for the loss, the release will have to be carefully drafted to ensure that it in no way impairs any claims
 
 *738
 
 against any person or company other than the driver and owner of the Hanson vehicle.
 

 In reviewing the information that I received in response to my request for the policy under F.S. 627.4137, I notice that I was given only the amendatory endorsements for one policy, and not the actual policy itself or a declarations page for it. I will of course, need a properly certified policy and full compliance with that statute as part of this settlement, in order to confirm that there is no other coverage available to either the owner or driver.
 

 The Hansons responded to this offer in a letter dated May 13, 2005, from counsel for State Farm Insurance Company, the Han-sons’ insurer. The May 13 letter provided, in pertinent part, as follows:
 

 ... The purpose of this letter is to respond to your clients’ settlement demands as set forth in your letter of April 15, 2005.
 

 State Farm accepts your settlement offers made on behalf of your clients in your April 15, 2005, letter. Specifically, State Farm is paying $10,000.00 to Darin Edward Bryan and $10,000.00 to Jamie Maxfield in return for releases of Cecil, Rebecca and Samuel Hanson, driver and owners of the Hanson vehicle. Enclosed please find draft, No. 1 19 230550 J, made payable to “Darin Bryan, a Single Individual & Morgan & Morgan, his Attorney,” and draft, No. 1 19 230553 J, made payable to “Jamie Maxfield, a Single Individual & Morgan & Morgan, her Attorney.” The settlement funds may not be disbursed until the enclosed Releases, or mutually agreeable substitute releases, have been executed and returned.
 

 Also, enclosed is a certified copy of the State Farm insurance policy, with endorsements and declarations page, policy No. 491 0398-C15-591, issued to Cecil and Rebecca Hanson and in effect on the date of the accident. We have also included a supplemental disclosure pursuant to Florida Statutes Section 627.4137. The providing of this policy and supplemental disclosure, together with the disclosure statements by Bob Rodriguez and Paul Donald, dated June 21, 2004 and September 22, 2004, respectively, previously provided to you, constitutes full compliance with Florida Statutes, Section 627.4137.
 

 Finally, enclosed please find Releases to be executed by your clients, Darin Edward Bryan and Jamie Maxfield, solely releasing Cecil, Rebecca and Samuel Hanson.... The form of this Release was largely drafted by the attorneys representing the Hansons, and it has been approved for use by them. I recognize that you may feel the form is not acceptable to your client. Please be assured that both the attorney representing the Hansons and I will be willing to discuss proposed changes, and will work with you to arrive at a form agreeable to all. Unilateral changes to the release form are not acceptable.
 

 We are pleased that the parties were able to reach an amicable resolution of this matter. I look forward to receiving signed Releases from you.
 

 Maxfield does not assert that the drafts or the form of release enclosed with the May 13 letter fail to comply with the conditions of the settlement. Maxfield contends, however, that the insurance policy and disclosures provided with Hansons’ acceptance letter did not comply with the disclosure requirements of section 627.4137(1), Florida Statutes (2005).
 
 [1]
 
 
 *739
 
 Thus, Maxfield argues, the conditions of the settlement offer have not been met by the Hansons’ acceptance and, as a result, the parties have not reached agreement as to all essential terms.
 

 “Settlements ... are governed by the rules for interpretation of contracts.”
 
 Robbie v. City of Miami,
 
 469 So.2d 1384, 1385 (Fla.1985);
 
 see also Williams v. Ingram,
 
 605 So.2d 890, 893 (Fla. 1st DCA 1992). As with any contract, a settlement agreement is formed only when one party makes an offer and another party accepts it. An acceptance of a settlement offer will be effective to create a binding settlement only if it is absolute, unconditional, and identical with the terms of the offer.
 
 Nichols v. Hartford Ins. Co. of the Midwest,
 
 834 So.2d 217, 219 (Fla. 1st DCA 2002);
 
 Schlosser v. Perez,
 
 832 So.2d 179, 182 (Fla. 2d DCA 2002). The acceptance must also be in the mode, at the place, or within the time expressly or impliedly stated in the offer.
 
 Nichols,
 
 834 So.2d at 219;
 
 Cheverie v. Geisser,
 
 783 So.2d 1115, 1119 (Fla. 4th DCA 2001). Courts use an objective test to determine whether the parties have made an enforceable contract.
 
 Robbie,
 
 469 So.2d at 1385. “The making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs — not on the parties having meant the same thing but on their having said the same thing.”
 
 Id.
 
 (quoting
 
 Black-hawk Heating & Plumbing Co. v. Data Lease Fin. Corp.,
 
 302 So.2d 404, 407 (Fla.1974)). Settlements are “highly favored and will be enforced whenever possible.”
 
 Robbie,
 
 469 So.2d at 1385.
 

 In the settlement offer made by Max-field, the essential terms were (1) paying to Maxfield the policy limits of the subject insurance policy, (2) structuring the release to avoid impairing any claims against “any person or company other than the driver and owner of the Hanson vehicle,” (3) delivering a “properly certified policy,” and (4) complying with section 627.4137 “in order to confirm that there is no other coverage available to either the owner or driver.”
 

 The May 13 letter, written on behalf of the Hansons, states that it “accepts your settlement offer made on behalf of your clients in your April 15, 2005, letter.” Thus, the May 13 letter is an unequivocal and unconditional acceptance of the offer made in the April 15 letter. In the remainder of the May 13 letter, State Farm’s counsel, on behalf of the Hansons, seeks to perform the conditions of the settlement. Accordingly, counsel encloses with the letter two drafts in the amount of $10,000 each; a release seeking to satisfy Max-
 
 *740
 
 field’s concerns; documents which he represents to be a certified copy of the subject insurance policy; and documents which, he represents, “constitutef ] full compliance with Florida Statutes, Section 627.4137.”
 

 In arguing that no settlement agreement was reached, Maxfield relies primarily on
 
 Cheverie v. Geisser
 
 and
 
 Schlosser v. Perez.
 
 Both cases are distinguishable. In
 
 Cheverie,
 
 the parties exchanged a series of ten letters which the trial court found constituted an enforceable settlement agreement. 783 So.2d at 1117-18. The district court reversed, however, because it concluded there was no evidence of acceptance of two crucial terms: the language of the release and the affidavit mandated by section 627.4137. 783 So.2d at 1119-20. The letters exchanged by the parties in
 
 Chever-ie,
 
 unlike the letters in the case under review, make it clear that there was no meeting of the minds, much less an agreement on the “external signs.”
 
 Robbie,
 
 469 So.2d at 1385.
 

 In
 
 Schlosser,
 
 the plaintiffs offer expressly stated: “Please understand that this settlement offer is intended to be an offer for a unilateral contract which will be accepted only by strict performance and not a promise to perform by you and/or your insureds, or substantial performance or partial performance by you and/or your insureds.” 832 So.2d at 180-81. The offer further provided that, as one of its conditions, the defendant provide “all the information required by Florida Statute 627.4137.”
 
 Id.
 
 at 180. In a series of correspondence, the defendant attempted to comply with the conditions of the offer; however, the defendant’s insurer refused to provide the statement provided by section 627.4137.
 
 Id.
 
 at 181. The trial court found that the parties had reached an enforceable settlement agreement.
 
 Id.
 
 at 180. The district court reversed, finding that the defendant’s “acceptance was not identical to the essential terms of the offer” because the defendant failed to provide the disclosure under the statute.
 
 Id.
 
 at 183.
 

 Unlike the series of conflicting letters in
 
 Cheverie,
 
 the two letters here constitute a settlement offer with specific terms and an unequivocal acceptance of the terms offered. In addition, although Maxfield asserts that her offer was, like the offer in
 
 Schlosser,
 
 an offer for a unilateral contract that required the Hansons to perform the conditions specified in the offer in order to accept it, her assertion is not supported by the record. Maxfield’s offer contains no language indicating that the conditions must be performed to have an acceptance of the settlement offer.
 

 We reverse and remand for further proceedings. We recognize that, on remand, Maxfield is likely to assert that, even if a settlement agreement was reached, the Hansons have failed to perform essential conditions of the settlement agreement. In that event, the trial court should determine whether the Hansons have failed to perform their obligations under the settlement agreement, and, if so, the remedy which is appropriate.
 
 See generally,
 
 S.R. Shapiro, Annotation,
 
 Remedies for Breach of Valid Accord or Compromise Agreement Involving Disputed or Unliquidated Claim,
 
 94 A.L.R.2d 504 (1964). We do not address whether any failure to perform occurred or the range of appropriate remedies.
 

 REVERSED and REMANDED for further proceedings consistent with this opinion.
 

 WOLF and KAHN, JJ., concur.
 

 [1]
 

 . Section 627.4137(1), Florida Statutes (2005) provides:
 
 *739
 
 (1) Each insurer which does or may provide liability insurance coverage to pay all or a portion of any claim which might be made shall provide, within 30 days of the written request of the claimant, a statement, under oath, of a corporate officer or the insurer’s claims manager or superintendent setting forth the following information with regard to each known policy of insurance, including excess or umbrella insurance:
 

 (a) The name of the insurer.
 

 (b) The name of each insured.
 

 (c) The limits of the liability coverage.
 

 (d) A statement of any policy or coverage
 

 defense which such insurer reasonably believes is available to such insurer at the time of filing such statement.
 

 (e)A copy of the policy.
 

 In addition, the insured, or her or his insurance agent, upon written request of the claimant or the claimant's attorney, shall disclose the name and coverage of each known insurer to the claimant and shall forward such request for information as required by this subsection to all affected insurers. The insurer shall then supply the information required in this subsection to the claimant within 30 days of receipt of such request.