CASANUEVA, Judge.
Julio Lunas instituted a first-party suit against the insurer of his home, Cooperati-va de Seguros Multiples de Puerto Rico, for breach of the insurance contract. The insurer moved to enforce a settlement agreement. The trial court determined that there was a valid and enforceable settlement agreement, granted the motion to enforce the agreement, and dismissed *241 Mr. Lunas’ complaint. For the reasons outlined below, we reverse.
Facts and Procedural History
Mr. Lunas’ residence suffered sinkhole damage that the insurer had admitted was a covered loss under his insurance policy. On September 10,. 2010, Mr. Lunas, through his counsel, Thomas W. Thompson of The Thompson Trial Group, corresponded with the insurer, offering to settle the claim. The settlement letter demanded that a draft in the amount of policy limits be tendered to Mr. Lunas’ attorney within seven days. Interestingly, the amount of the policy limits was not mentioned in this letter.
On October 7, 2010, the insurer responded by correspondence directed to Mr. Lunas and The Thompson Trial Group. Enclosed with this correspondence were reports regarding the cost to repair the Lunas home and a release to sign as a condition for receiving the $115,861 settlement check.
On October 28, 2010, Lisa M. Bernardini of The Rock Law Group, acting on behalf 'of her client, the insurer, forwarded a communication to Mr. Thompson seeking to memorialize a telephone conversation they had on that date. Her letter reflected an offer from Mr. Lunas to settle this claim for the policy limits of $115,861 dependent upon a “check split.” The communication set forth her understanding that the insured demanded one $85,000 check made out to the insured and the mortgagee (Wa-chovia), and the other check, for $30,861, made out to the insured, the Thompson Law Group, and the public adjuster. She closed by saying that she would contact the insurer for its response to this demand. On November 12, 2010, by overnight mail, The Rock Law Group sent Mr. Thompson one check in the amount of $115,861, payable to the insured, the mortgagee (Bank of America), the public adjuster, and Thompson Trial Group.
During the exchange outlined above, Mr. Lunas’ breach of contract action remained pending. The action ended when the trial court concluded that the above identified exchanges resulted in an enforceable settlement agreement, particularly since the offer to settle Mr. Lunas’ claim contained an impossibility.[1]
Analysis
“Settlement agreements are governed by contract law.” Schlosser v. Perez, 832 So.2d 179, 182 (Fla. 2d DCA 2002) (citing Robbie v. City of Miami, 469 So.2d 1384, 1385 (Fla.1985)). A settlement agreement forms only when one party makes an offer and the other party accepts. There “must be a meeting of the minds as to the essential settlement terms in order for settlement agreements to be enforceable.” Id. The general rule is that “an acceptance of an offer must be unconditional and identical with the terms of the offer.” Id. (citing Giovo v. McDonald, 791 So.2d 38, 40 (Fla. 2d DCA 2001)). Courts must use an objective test to determine whether an enforceable contract was made. Robbie, 469 So.2d at 1385. “ ‘The making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs — not on the parties having meant the same thing but on their having said the same thing.’” Hanson v. Maxfield, 23 So.3d 736, 739 (Fla. 1st DCA 2009) (quoting Robbie, 469 So.2d at 1385).
*242 The insurer advances two theories that explain how, it contends, an enforceable contract came into being. The record demonstrates that neither theory gave rise to an enforceable contract.
First, the insurer asserts it met the terms offered in the letter of September 10, 2010. This correspondence set forth two conditions for settlement: (1) a settlement check for “policy benefits” and (2) to be received within seven days “from receipt of this letter.” The insurer met neither condition. Most importantly, the amount of “policy benefits,” an essential element, was unstated.
Second, the insurer argues that it met the conditions identified in the October 28, 2010, letter issued by The Rock Law Group. The letter identified the insured’s split check demand. Two checks were demanded, only one was sent. Additionally, the mortgagee named on the check differed from that which the split check demand had required. The parties had to have “said the same thing,” see Robbie, 469 So.2d at 1385 (quoting Blackhawk Heating & Plumbing Co. v. Data Lease Fin. Corp. 302 So.2d 404, 407 (Fla.1974)), but they have not. There was no meeting of the minds as that term is understood.
Conclusion
Because there was not a meeting of the minds, the conclusion we must reach is that the parties did not enter into a settlement agreement. See Gonzalez v. Claywell, 24 So.3d 1260, 1261 (Fla. 1st DCA 2009) (stating that it is not proper for a court to “rewrite a contract by including terms that one of the parties expressly rejected”). Although we reverse, we share the trial court’s concern regarding the split check disposition of funds. Nevertheless, by the objective standard required, no contract to settle came into being.
Reversed, order of dismissal vacated, and case remanded for further proceedings.
WHATLEY and KELLY, JJ., Concur.

. The impossibility the trial court noted was the attempt to exclude the lienholder/mort-gagee from the insurance proceeds. The order granting the motion to enforce the settlement agreement stated that the mortgagor did not have the right to dictate who could get the proceeds, and depriving the mortgagee of its legally obligated right to the insurance proceeds to satisfy its lien would be against public policy.