# Third District Court of Appeal

## State of Florida

Opinion filed February 21, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-891
Lower Tribunal No. 14-27810
_____

**Wickberto Marin,**
Appellant,

vs.

**Infinity Auto Insurance Company, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Migna Sanchez-Llorens, Judge.

DeMahy Labrador & Drake, P.A., and Orlando D. Cabeza, Frank L. Labrador, and Angel Castillo, Jr., for appellant.

White & Case, LLP, and Raoul G. Cantero and Christopher W. Swift-Perez, for appellee Infinity Auto Insurance Company.

Before ROTHENBERG, C.J., and EMAS and LUCK, JJ.

ROTHENBERG, C.J.

Wickberto Marin ("Marin"), the plaintiff below, appeals the final order granting Infinity Auto Insurance Company's ("Infinity") motion to enforce settlement and dismissing with prejudice the action filed by Marin against Infinity's insured, Ricardo Valdes Blanco ("Blanco"), subject to the terms of the settlement agreement. Because the undisputed material facts support the trial court's finding that the parties entered into a valid settlement agreement, we affirm.

## Background

In October 2014, Marin filed an automobile negligence action against Blanco. Thereafter, Infinity was permitted to intervene for the sole purpose of allowing it to seek enforcement of an alleged settlement agreement reached by Marin and Blanco prior to Marin's filing of the automobile negligence action. The facts relating to the automobile accident and the alleged settlement agreement are as follows.

On December 24, 2013, Marin was injured in an automobile accident allegedly caused by Blanco, an Infinity policyholder. Marin was treated at Jackson Memorial Hospital ("JMH") and discharged from JMH on January 16, 2014. Thereafter, Infinity sent Marin's then-attorney, Jason Deitch ("Deitch"), a letter tendering the $10,000 bodily injury policy limit to settle Marin's bodily injury claim against Blanco. The letter included a standard release and a $10,000 check

2

made payable to Marin, Deitch, and JMH. In the letter, Infinity also explained that it included JMH on the check because JMH appeared to have a lien for the medical services provided by JMH to Marin. Infinity, however, offered to reissue the check if the lien had been resolved. Deitch did not respond to Infinity's letter or cash the check.

Marin subsequently retained a new attorney, and on April 7, 2014, Marin's newly-retained attorney, Jose Francisco ("Marin's attorney"), notified Infinity in writing that he had been retained to represent Marin and demanded that Infinity tender its full policy limits. The letter stated: "It is my understanding that your insured has $10,000 in available liability coverage, which I am requesting that your company tender by delivering the **settlement draft** to my office by the close of business on April 28, 2014." (emphasis added). The demand letter also included medical records from JMH documenting Marin's treatment.

On April 25, 2014, Infinity responded by sending Marin's attorney a letter, which specifically stated that Infinity "agree[d] to meet [Marin's] settlement demand." The letter also included a $10,000 check made payable to Marin, Marin's attorney, and JMH; a release; and an open invitation to submit modifications to the settlement draft. The letter again explained that JMH had been listed as a payee on the settlement check because JMH appeared to have a

3

lien for the medical services it had provided to Marin. However, Infinity offered to reissue the check if the lien was resolved.

Because Infinity had included JMH as a joint payee on the settlement check, Marin's attorney treated the payment as a counteroffer and rejected the settlement payment on April 30, 2014. Infinity and Marin's attorney exchanged letters discussing whether a settlement had been reached, and thereafter, Infinity twice reissued the check without including JMH as a co-payee. Marin's attorney rejected both payments.

Following Marin's attorney's rejection of the checks issued by Infinity, Infinity filed a motion to enforce the settlement. Following a hearing, the trial court granted the motion and dismissed with prejudice Marin's action filed against Blanco subject to the terms of the settlement agreement. Marin's appeal followed.

## Analysis

It is undisputed that Marin's April 7, 2014 letter constituted an offer to settle his bodily injury claim against Blanco. The only issue before this Court is whether Infinity's April 25, 2014 response constituted an acceptance or a counteroffer. The trial court found that: (1) the inclusion of JMH as a joint payee on the settlement check was not an essential term of the settlement agreement because Infinity did not condition settlement on Marin's agreement to that term, given that Infinity, in its letter tendering the check, invited Marin to propose modifications to the

4

settlement draft; and (2) the inclusion of JMH was not an objectionable and unusual term because there was uncertainty whether JMH possessed a lien for the medical services rendered to Marin, which Infinity was required to protect under Florida law. Because we agree that Infinity's response to Marin's settlement offer constituted an acceptance, forming a valid settlement agreement, we affirm the trial court's order granting Infinity's motion to enforce the settlement and dismissing with prejudice the action filed by Marin subject to the terms of the settlement agreement.

The question of whether a contract was formed is a legal determination which we review de novo. Mercury Ins. Co. of Fla. v. Fonseca, 3 So. 3d 415, 417 (Fla. 3d DCA 2009). Under Florida law, settlement agreements are governed by contract law. See Robbie v. City of Miami, 469 So. 2d 1384, 1385 (Fla. 1985). "To form a binding contract there must be an offer and acceptance." Fonseca, 3 So. 3d at 417. "[A]n acceptance must contain an assent–or meeting of the minds–to the essential terms contained in the offer." Nichols v. Hartford Ins. Co. of the Midwest, 834 So. 2d 217, 219 (Fla. 1st DCA 2002). To determine whether a contract was formed, courts use an objective test, which focuses on what the parties said, not on what they meant. Robbie, 469 So. 2d at 1385.

In the instant case, the parties agree that Marin's April 7, 2014 letter only contained two essential terms: (1) Infinity must tender the $10,000 bodily injury

5

liability limit in the form of a **settlement draft**; and (2) Infinity must do so by April 28, 2014. Infinity timely responded to Marin's letter on April 25, 2014, agreeing to meet all of Marin's settlement demands, thus, accepting Marin's offer to settle. See Erhardt v. Duff, 729 So. 2d 529, 530 (Fla. 4th DCA 1999) (holding that a letter agreeing to meet the demands in a settlement offer constitutes an acceptance).

Marin contends that, although Infinity agreed to meet all of his settlement demands, Infinity's inclusion of JMH on the settlement check added a new essential term to the agreement, converting Infinity's purported acceptance into a counteroffer. The trial court properly rejected this argument based on the circumstances presented.

As the Second District Court of Appeal correctly noted in Giovo v. McDonald, 791 So. 2d 38, 40 (Fla. 2d DCA 2001), an "'essential term' of a contract differs according to the circumstances. But surely, it must include the terms specified in an offer to make a contract." Id. Here, Marin's demand letter only provided two essential terms in order to reach a settlement, both of which were met when Infinity tendered the full policy limits by April 28, 2014. Nowhere in the demand letter did it state who should be included on the settlement check; the demand letter only stated that Infinity must submit a "settlement draft" by April 28, 2014.

6

Infinity's inclusion of JMH as a co-payee on the settlement check was also consistent with the information provided by Marin's attorney. Marin was a Medicaid patient, and this information was listed on the medical forms Marin's attorney provided to Infinity when making the demand. Under Florida law, a hospital lien attaches at the moment an injured person is admitted as a patient. See State Farm Mut. Auto. Ins. Co v. Palm Springs Gen. Hosp. Inc. of Hialeah, 232 So. 2d 737, 738 (Fla. 1970). Section 25C-2, Miami-Dade County Code, provides that "[n]o person shall be entitled to recover or receive damages on account of hospital care, treatment and maintenance unless he shall affirmatively show that he has paid the cost thereof." Section 25C-3 additionally provides that hospitals operating in a Florida county with a population in excess of 325,000

> shall be entitled to a lien for all reasonable charges for hospital care, treatment and maintenance of ill or injured persons upon any and all causes of action, suits, claims, counterclaims and demands . . . and upon all judgments, settlements and settlement agreements rendered or entered into by virtue thereof, on account of illness or injuries giving rise to such causes of action, suits, claims, counterclaims, demands, judgment, settlement or settlement agreement and which necessitated or shall have necessitated such hospital care, treatment and maintenance.

The purpose of these provisions is to "assure a hospital of its rights to proceeds which are held by an insurance company whose insured is liable for the injuries suffered by the hospital's patient." Palm Springs Gen. Hosp., Inc. v. State Farm Mut. Auto. Ins. Co., 218 So. 2d 793, 797-98 (Fla. 3d DCA 1969).

7

Although JMH had not perfected a lien against Marin at the time of the settlement request, "a tardy filing does not invalidate the hospital lien, but only results in the lienor or creditor being an unsecured creditor, at least until such time as the lien is filed." See Public Health Trust of Dade Cty. v. Carroll, 509 So. 2d 1232, 1234 (Fla. 4th DCA 1987). Further, even though a patient may be covered by Medicaid, Medicaid recipients remain responsible for deductibles, copayments, and cost sharing. See 42 C.F.R. § 447.15 (2018).

At the time of Marin's settlement offer and Infinity's acceptance of the offer, it appeared that JMH may have had an actionable lien for its services based on the medical documents submitted to Infinity. This presented a dilemma for Infinity. Section 25C-3 provides that JMH was entitled to a lien for all reasonable charges for Marin's care, but Marin had made no attempt to affirmatively show that all of the costs had been paid or satisfied as required by section 25C-2. Based on the uncertainty this created, Infinity definitively agreed to the settlement terms and issued a check for the policy limits payable to both Marin and JMH with an invitation to Marin to provide information that JMH's lien had been resolved.

When faced with a similar dilemma in Government Employees Insurance Co. v. Gonzalez, 512 So. 2d 269, 270 (Fla. 3d DCA 1987), this Court held that it was proper for the insurer to issue a check payable to both the hospital and the insured. In Gonzalez, GEICO was obligated to pay Gonzalez's PIP claim but the

8

hospital had not formally released its claim to the proceeds. This Court held that GEICO had two choices: (1) issue a check for the limits payable to both the hospital and Gonzalez; or (2) file an interpleader action and let the court resolve the issue. Id. at 270-71; see also Margiotta v. State Farm Mut. Auto. Ins. Co., 622 So. 2d 135, 136 (Fla. 4th DCA 1993) (noting that there was neither a hospital lien nor any evidence that the hospital had made a claim for the PIP benefits, but even if there had been competing claims by the insured and the hospital, the insurer should have either issued a joint check to the hospital and the insured or interpleaded the funds). Thus, if JMH was not going to pursue a lien against Marin for its services, all Marin needed to do to remove JMH from the settlement check was to notify Infinity of that fact, as Infinity had invited Marin and his attorney to do.

Our decision is this case is further bolstered by this Court's opinion in Boyko v. Ilardi, 613 So. 2d 103, 104 (Fla. 3d DCA 1993). In Boyko, this Court held that, because the parties had expressly agreed to the settlement terms and "the execution of the settlement documents was not a condition precedent to the settlement agreement, but rather a procedural formality," a valid and binding settlement existed between the parties. In the instant case, who was to be included on the settlement check was merely a procedural formality to the agreement because only two conditions were demanded in the letter sent by Marin's attorney.

9

Once the offer was made to Infinity, all that was required by Infinity to form a valid settlement agreement was acceptance. By tendering the full policy limits by April 28, 2014, Infinity accepted the demands stated in the offer by Marin, thus, forming a valid settlement agreement.

**Conclusion**

Because Marin's settlement demand only included two essential terms, both of which were met by Infinity when it tendered the full policy limits by April 28, 2014, we find that the trial court did not err by finding that a valid settlement agreement was reached between Marin and Infinity. The inclusion of JMH as a co-payee on the settlement check did not convert Infinity's unequivocal acceptance of the essential terms of the offer into a counteroffer, especially where it was unclear whether there remained a balance for the services JMH rendered for Marin's treatment, JMH was entitled to file a lien for any unpaid balance, Marin did not dispute that JMH had a lien for any unpaid balance, Marin did not notify Infinity that JMH did not intend to pursue its lien rights, and Infinity offered to remove JMH as a co-payee if JMH's lien was resolved. We therefore affirm the trial court's order finding that there existed a valid settlement agreement between Marin and Infinity; granting Infinity's motion to enforce that settlement; and dismissing

10

with prejudice the action filed by Marin against Blanco subject to the terms of the settlement.[1]

Affirmed.

---

[1] Based on the above findings, we decline to address the trial court's additional findings and Marin's arguments as to those findings.