[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-15141
Non-Argument Calendar

_____

D.C. Docket No. 8:13-cv-02724-JDW-SPF

MERIA BROADNAX,

Plaintiff-Appellee,

versus

SAND LAKE CANCER CENTER, P.A.,
VINICIO HERNANDEZ, M.D.,

Defendant-Appellants,

UNITED STATES OF AMERICA,

Movant-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(July 6, 2020)

Before MARTIN, ROSENBAUM, and BRANCH, Circuit Judges.

PER CURIAM:

Vinicio Hernandez, M.D., and the Sand Lake Cancer Center (together, "Appellants") appeal the district court's enforcement of a settlement agreement between them and relator Meria Broadnax arising from Broadnax's complaint alleging that Appellants submitted false claims to the government in violation of the federal and Florida False Claims Acts. On appeal, we need only to address whether the district court erred in finding that the agreement constitutes an enforceable contract.[1] We affirm.

## I. Background

In 2013, Broadnax, a former pharmacy technician with the Sand Lake Cancer Center, filed a *qui tam* suit on behalf of the United States and the state of Florida against Appellants, alleging violations of the federal and Florida False Claims Acts. The United States subsequently declined to intervene. After a protracted period of discovery and the district court's denial of summary judgment, trial was set for March 2019.

---

[1] Broadnax also raises the issue of whether we have appellate jurisdiction to entertain an appeal of an order enforcing a settlement agreement pursuant to 28 U.S.C. § 1291. That question was settled in our Circuit long ago. *See Mass. Cas. Ins. Co. v. Forman*, 469 F.2d 259, 260 (5th Cir. 1972) (holding that an order enforcing a settlement agreement where material facts are not in dispute was "in practical effect" a "final judgment within the meaning of § 1291").

But before trial began, the parties mediated their claims before the magistrate judge and signed a document entitled "Principal Terms of Settlement" (hereinafter "terms sheet"). The terms sheet sets forth five terms that were "[s]ubject to the approval of the United States of America ("DOJ") and U.S. Health and Human Services" ("HHS"):

1.  Sand Lake Cancer Center, P.A. and Vinicio Hernandez, MD. [hereinafter "Defendants"] do not admit to any liability whatsoever.
2.  The non-government Parties will sign a mutual general release.
3.  The Defendants will submit the financial information requested by and to the Department of Justice [hereinafter "DOJ"] so that DOJ can conduct an analysis of the Defendants' ability to pay.
4.  The Parties agree that the "ability to pay" number determined by DOJ will be the amount of gross recovery from the defendants.
5.  The Settlement Agreement in this matter will reflect these terms.

Both the parties and their attorneys signed the terms sheet. The district court then entered an order dismissing the case without prejudice because it had "been advised that [the] case has been settled," and gave the parties a time frame to submit a stipulated final order or move to reopen the action upon a showing of good cause. The court informed the parties that at the close of that window it would enter a final judgment and dismiss the case with prejudice. Due to delays in the DOJ's processing of the request to set a payment amount, the parties filed a total of three joint motions for an extension of the deadline to close or reopen the case. In all three joint motions, the parties acknowledged up front that they had "reached a settlement."

3

Pursuant to the terms sheet, the DOJ eventually determined that the amount of "gross recovery" Appellants owed Broadnax was $2 million.  The parties then attempted to negotiate the final terms of their settlement but were unsuccessful.  They were hung up on two issues: (1) "the incremental payment amounts" and (2) the "duration of the settlement agreement."  Accordingly, they jointly moved for a status conference with the magistrate judge in an effort to resolve these two issues.  Notably, in their joint motion, the parties again conceded that during their previous mediation they had "reached a settlement," but that further conference was necessary to merely "discuss any remaining issues that may be impeding the closure of this matter."  That status conference resulted in an impasse.

The parties then filed cross-motions to reopen the case.  Broadnax sought enforcement of "the settlement reached by the parties."  Appellants sought a reset of the case for trial in light of the impasse following their "tentative understanding."  Specifically, Appellants averred that the terms sheet did not constitute an enforceable settlement agreement because it was missing several material terms, such as the timing of payment and consequences of breach.  After an evidentiary hearing on the matter, the district court ruled in Broadnax's favor on both motions, reasoning that, under Florida law, the terms sheet contained all the terms essential for settlement of *this particular action* and thus was binding.  Appellants timely appealed.

4

## II. Discussion

Appellants allege that the district court erred by finding that the terms sheet was a binding and enforceable settlement agreement.  We disagree.

We review a district court's ruling on a motion to reopen for abuse of discretion.  *See Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1485 (11th Cir. 1994).  We review *de novo* the construction of a settlement agreement. *Schwartz v. Fla. Bd. of Regents*, 807 F.2d 901, 905 (11th Cir. 1987).  "The construction and enforcement of settlement agreements are governed by principles of the state's general contracts law."  *Wong v. Bailey*, 752 F.2d 619, 621 (11th Cir. 1985).  In both Florida and federal courts, "settlements are highly favored and will be enforced whenever possible."  *Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985) (citing *Pearson v. Ecological Science Corp.*, 522 F.2d 171 (5th Cir. 1975)).

"To compel enforcement of a settlement agreement, its terms must be sufficiently specific and mutually agreed upon as to every essential element." *Spiegel v. H. Allen Holmes, Inc.*, 834 So. 2d 295, 297 (Fla. 4th Dist. Ct. App. 2002).  "Uncertainty as to nonessential terms or small items will not preclude the enforcement of a settlement agreement."  *Id.*  "The definition of 'essential term' varies widely according to the nature and complexity of each transaction and is evaluated on a case-by-case basis."  *Lanza v. Damian Carpentry, Inc.*, 6 So. 3d

674, 676 (Fla. 1st Dist. Ct. App. 2009). "[P]arties to a contract do not have to deal with every contingency in order to have an enforceable contract." *Robbie*, 469 So. 2d at 1385.

We find that the terms sheet is an enforceable settlement agreement under Florida law. Appellants' core argument on appeal is that the terms sheet is not a binding settlement agreement because it fails to specify the timing of payment and consequences of breach,[2] which it asserts are always essential under Florida law Appellants fail to point to a single authority, however, demonstrating that terms setting the timing of payment and consequences of breach are essential *per se* to every settlement under Florida law.[3] *Cf. Lanza*, 6 So. 3d at 676. Rather, the opposite is true. *See F.I.T. Aviation, Inc. v. Gleason*, 510 So. 2d 1217, 1219 (Fla.

---

[2] We note that Appellants articulate their grievances with the terms sheet in a variety of specific and non-specific formulations. They assert in their statement of the case that the missing material terms include "the timing of payment, amounts [sic] of payment, security for the same, *as well as on numerous other issues*." (emphasis added). And again, while summarizing their argument, they assert that "the material terms remaining undecided include the timing and duration of the payment amounts, remedies for breach, *inter alia*." In their motion to reopen the case, Appellants contended that there was no agreement on the "consequences for breach," "timing of payment, security for same, *as well as on numerous other issues*." From these various articulations of the essential terms that Appellants allege to be missing from the terms sheet, we understand the core of the Appellants' argument to focus on a lack of information regarding the timing of payment and consequences of breach. These are the items principally addressed by the district court.

[3] Appellants cite to several cases in which payment timing was deemed an essential term because the parties had listed it in the contract itself. *See, e.g.*, *Nanci S. Landy, P.A. v. Empire Marble and Granite, Inc.* 762 So.2d 954, 955 (Fla. 3d Dist. Ct. App. 2000) (discussing conflict arising from an agreement that "contained specific language about the timeliness of the installment payments"); *Sublime, Inc. v. Boardman's Inc.*, 849 So. 2d 470 (Fla. 4th Dist. Ct. App. 2003) (assessing whether "time was of the essence" in a commercial lease contract which provided that the lessee must pay a termination fee on the fifth day of each month).

5th Dist. Ct. App. 1987) (enforcing a settlement agreement despite the fact that the parties neglected to include terms describing the "time payment will be made [or] . . . the rate at which interest will accrue" because a party desiring any such terms "must [make them] a part of the settlement agreement").

Nor does the "nature and complexity" of this case lead us to conclude that the terms concerning the timing of payment or consequences of a breach are essential to *this* settlement agreement. *See Lanza*, 6 So. 3d at 676. The essential terms of the settlement are that the appellants will pay a gross recovery amount, as determined by DOJ, in exchange for the general mutual release of claims. As to these terms, there was no disagreement.[4] Further, Appellants point to nothing in the record demonstrating that terms setting the timing of payment or consequences of breach were at issue or even contemplated *before* the parties signed the terms sheet. In fact, the record demonstrates that, even after they signed the terms sheet, the parties proceeded before the district court as if through that document they had "reached a settlement." *See Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp.*, 302 So. 2d 404, 408 (Fla. 1974) ("Even though all the details are not definitely fixed, an agreement may be binding if the parties agree on the essential terms and seriously understand and *intend the agreement to be binding on*

---

[4] Appellants conceded unequivocally to the district court that the question of amount was not at issue.

*them*.").  Accordingly, Appellants provide no legal or factual basis to accept their argument that terms setting the timing of payment or consequences of breach should be considered essential to their settlement of the case.  We therefore conclude that the district court did not err in finding that the terms sheet is a binding settlement agreement, and thus did not abuse its discretion in granting Broadnax's, but not Appellants', motion to reopen.

**AFFIRMED**.