834 So.2d 217 (2002)
Cynthia NICHOLS and the Estate of Lila Nichols, Appellants/Cross-Appellees,
v.
The HARTFORD INSURANCE COMPANY OF THE MIDWEST, for itself and on behalf of Willie Bradham, Lillie Bradham and Cedrick Frasier, Appellees/Cross-Appellants.
Nos. 1D01-4222, 1D01-5126.
District Court of Appeal of Florida, First District.
October 9, 2002.
Rehearing Denied January 10, 2003.
*218 Michael T. Callahan and Jennifer C. Worden, Tallahassee, for Appellants/Cross-Appellees.
Kathy J. Maus and Anthony J. Russo of Butler Burnette Pappas LLP, Tallahassee, for Appellees/Cross-Appellants.
WOLF, J.
Appellants/Cross-Appellees, Lila and Cynthia Nichols, were injured when their motor vehicle was struck by a vehicle insured by The Hartford Insurance Company of the Midwest ("The Hartford"). The Nichols' attorney submitted demand letters on their behalf to The Hartford which stated in relevant part,
We will accept the policy limits should our law firm receive those funds by 5:00 p.m. on Friday, August 25, 2000, unless accepted prior thereto in writing. This offer is subject to written verification that the available policy limits are in fact $10,000. Should our law firm not receive those funds by 5:00 p.m. on Friday, August 25, 2000, our offer to resolve this case for the policy limits will be withdrawn and we shall proceed accordingly.[1]
(Emphasis in original.)
The Hartford responded by letter, agreeing to send checks for the policy *219 limits with written releases by the dates specified in the demand letters. Accordingly, The Hartford sent the settlement checks and releases within the specified time frame. Upon receipt, however, Appellants' attorney objected to indemnification language in the releases which required his clients to indemnify The Hartford for any future litigation arising out of the accident or their claims. Appellants returned the settlement checks to The Hartford with a letter rejecting the indemnification language in the releases:
We could never agree on behalf of our client, nor advise our client, "to release and hold harmless" an insurance company, such as The Hartford Insurance Company, from any liens of any nature. Nor could we ever agree on behalf of our client, nor advise our client, to indemnify an insurance company such as The Hartford Insurance Company (and all of its employees and others) from all further claims and demands of any kind.
The Hartford responded by submitting releases without the objectionable language.
When the Appellants did not respond to the new releases, The Hartford filed a declaratory action to enforce the settlement agreements between the parties. The trial court entered an order granting summary judgment in favor of The Hartford. Thereafter, The Hartford moved for an award of attorney's fees pursuant to section 57.105, Florida Statutes (1999), which the trial court denied. On direct appeal, the Nichols argue that there was no meeting of the minds and, therefore, no settlement agreement; on cross-appeal, The Hartford argues that the trial court erred in denying its motion for attorney's fees.
In Florida, settlement agreements are governed by the law of contracts. See Williams v. Ingram, 605 So.2d 890, 893 (Fla. 1st DCA 1992). Pursuant to contract law, the acceptance of an offer which results in an enforceable agreement must be (1) absolute and unconditional; (2) identical with the terms of the offer; and (3) in the mode, at the place, and within the time expressly or impliedly stated within the offer. Cheverie v. Geisser, 783 So.2d 1115, 1119 (Fla. 4th DCA 2001). Thus, an acceptance must contain an assentor meeting of the mindsto the essential terms contained in the offer. Id. Here, the parties agree that the material facts are undisputed, and they conceded at oral argument that although it was implicit in the settlement agreement that the Appellants would execute releases, there was no meeting of the minds as to whether indemnification language would be included in those releases. The issue before us is whether this disagreement between the parties as to the indemnification language was an essential term of the settlement. We agree with the Appellants and find that it was.
The definition of "essential term" varies widely according to the nature and complexity of each transaction and is evaluated on a case-by-case basis. See Dimase v. Aquamar 176, Inc., 835 So.2d 1150 (Fla. 3d DCA 2002); see also Giovo v. McDonald, 791 So.2d 38, 39 (Fla. 2d DCA 2001) ("Certainly, what is an `essential term' of a contract differs according to circumstances."). Although all the details of a release do not need to be absolutely decided as long as the parties agree on the essential terms, see Robbie v. City of Miami, 469 So.2d 1384 (Fla.1985) (noting settlement agreement is enforceable even though the agreement fails to anticipate *220 every contingency), the indemnification clause in this case was an essential term.
In Cheverie, the claimant's husband was killed in an automobile accident, and claimant had filed a wrongful death action. The trial court dismissed the complaint, finding the parties had reached a settlement agreement despite the fact that the parties had not agreed on the indemnification language in the release. The appellate court reversed, finding there was no meeting of the minds, and therefore, no settlement agreement:
Here, there was no evidence of acceptance on [ ] crucial terms. [P]laintiff did not agree to the indemnification language in the release defendant presented for her execution. Plaintiff immediately raised an objection to the proposed release after receiving it and demanded its removal. However, this issue was not resolved before suit was filed. Where the language of a release is disputed and the parties fail to reach an agreement as to the character, nature, or type of release to be used, an essential element of the agreement is not established.
Id. at 1119. See also Long Term Management, Inc. v. University Nursing Care Center, 704 So.2d 669, 675 (Fla. 1st DCA 1998) ("UNCC's counsel called with objections to an indemnification clause.... These circumstances do not show the requisite meeting of the minds...."). Therefore, the trial court should have denied The Hartford's motion for summary judgment on their settlement enforcement claims and should have granted the Nichols' motion for summary judgment on the defense that there was no meeting of the minds.
The Hartford argues that the "tender" of the check within the time limits constituted completion of the settlement agreement despite the fact that the parties were in disagreement about the indemnification language. Appellees conceded at oral argument, however, that appellants' attorney was not free to cash the check until the terms of the release had been agreed to. Therefore, no settlement could have existed at that time.
The Hartford also argues that Appellants' failure to respond after the objectionable language was removed from the releases indicated acceptance. However, The Hartford's removal of the indemnification language evinced a new settlement offer which the Nichols were not obliged to accept. See Ribich v. Evergreen Sales & Service, Inc., 784 So.2d 1201 (Fla. 2d DCA 2001) (reversing summary judgment based on holding that there was no meeting of the minds and, therefore, no settlement agreement where insured had returned insurer's tendered check and thereby rejected any counteroffer by insurer); see also, Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co., 761 So.2d 306 (Fla.2000) (analyzing specific language in release to determine the ultimate rights and potential liabilities of the parties).
We reverse the trial court's granting of The Hartford's motion for summary judgment for proceedings consistent with this opinion. Accordingly, the trial court's denial of The Hartford's motion for attorneys' fees pursuant to section 57.105, Florida Statutes (1999), is affirmed.
REVERSED IN PART, AFFIRMED IN PART.
VAN NORTWICK and POLSTON, JJ., concur.
NOTES
[1] The letter sent on behalf of Lila Nichols demanded the policy limits be received no later than 5:00 p.m. on September 15, 2000.