983 So.2d 1189 (2008)
Olga PERAZA, Appellant,
v.
Irma ROBLES, Appellee.
No. 3D06-725.
District Court of Appeal of Florida, Third District.
April 9, 2008.
Rehearing Denied June 23, 2008.
*1190 Hunter, Williams & Lynch, Coral Gables and Christopher J. Lynch and Steven Hunter, for appellant.
Anania, Bandklayder, Blackwell, Baumgarten, Torricella & Stein and Douglas H. Stein, Miami, for appellee.
Before COPE and SUAREZ, JJ., and SCHWARTZ, Senior Judge.

ON MOTION FOR REHEARING
SCHWARTZ, Senior Judge.
We grant appellant's motion for rehearing. The opinion issued on July 18, 2007, is withdrawn and the following opinion is substituted in its place.
After the plaintiff-appellant Peraza was involved in a serious automobile accident caused by the defendant-appellee Robles, Peraza's counsel sent Robles' liability carrier MGA Insurance Company a bad faith letter demanding that it pay the $10,000 policy limits within fifteen days. Virtually by return mail, a $10,000 draft from MGA claims adjuster Mario Fernandez was forwarded to counsel. The letter required that the check be held in escrow by Peraza's counsel until MGA received "an unaltered release executed . . . along with a copy of the U/M Carrier Authorization of Settlement and Waiver of Subrogation Rights." [emphasis in original]. The plaintiff did not negotiate the draft, however, and filed suit in Monroe County circuit court. This appeal is by the plaintiff from a final order enforcing the $10,000 settlement and dismissing the case. We reverse.
We agree with the plaintiff's contention that MGA's response to her offer  that is the claims adjuster's demand for the unaltered release, which included an objectionable hold harmless provision and the UM carrier subrogation waiver  did not demonstrate an effective acceptance of Peraza's offer. Because the documents demanded in MGA's response were not shown to be "usual settlement documents" implicit in any settlement, Nichols v. Martell, 612 So.2d 657, 658 (Fla. 3d DCA 1993); Erhardt v. Duff, 729 So.2d 529, 530 (Fla. 4th DCA 1999); Boyko v. Ilardi, 613 So.2d 103, 104 (Fla. 3d DCA 1993), and thus, constituted a separate additional requirement that conditioned the settlement on the submission of the requested documents, we conclude that MGA's response was a counteroffer that served as a rejection of Peraza's offer. See Nichols v. Hartford Ins. Co. of the Midwest, 834 So.2d 217, 220 (Fla. 1st DCA 2002), review denied, 845 So.2d 890 (Fla.2003); Ribich v. Evergreen Sales & Serv., Inc., 784 So.2d 1201 (Fla. 2d DCA 2001); see also Cheverie v. Geisser, 783 So.2d 1115, 1119 (Fla. 4th DCA 2001), review denied, 805 So.2d 806 (Fla.2001); Grimsley v. Inverrary Resort Hotel, Ltd., 748 So.2d 299 (Fla. 4th DCA 1999); Bateski v. Ransom, 658 So.2d 630 (Fla. 2d DCA 1995); Dale Swope, Tips for Auto Practitioners, Fla. Just. Ass'n J., *1191 Aug. 2007, at 25; cf. Dania Jai-Alai Palace, Inc. v. Sykes, 495 So.2d 859 (Fla. 4th DCA 1986).
Robles counter argues, however, that Peraza accepted the counteroffer, rendering the settlement binding and enforceable. In support of that contention, she submitted an affidavit of her claims adjuster to the effect that he spoke with Peraza's counsel's secretary, and that she agreed to provide MGA with an executed release and a UM carrier authorization. We do not accept this contention because, in response, Peraza denied those allegations and sought an evidentiary hearing to resolve the conflict. See Architectural Network, Inc. v. Gulf Bay Land Holdings II, Ltd., 933 So.2d 732 (Fla. 2d DCA 2006); Nichols v. Martell, 612 So.2d at 658-59. In seeking enforcement of the purported agreement, it was MGA's burden to prove the secretary's acceptance and her authority to agree. Because it failed to do so, we reverse the dismissal, and remand for an evidentiary hearing.
Reversed and remanded.
SUAREZ, J., concurs.
COPE, J. (dissenting).
The legal question is whether there was a valid offer and acceptance in this case, or whether the settlement documentation demanded by MGA Insurance Company amounted to a counteroffer. In my view the trial court correctly found there to be an acceptance. We should affirm the order under review.
While walking, plaintiff Olga Peraza was struck by a car driven by the defendant, Irma Robles. The plaintiff's counsel sent a letter to the defendant's insurer, MGA, requesting a tender of the $10,000 policy limits within fifteen days. MGA replied by sending a check for the $10,000 limit, conditioned on (a) execution of a release which included a hold harmless agreement, and (b) a waiver of subrogation rights by plaintiff's uninsured motorist (UM) carrier.
The plaintiff took the position that MGA's demand for the execution of the settlement documents amounted to a counteroffer. The plaintiff contended that she had rejected the counteroffer, and there was no settlement. Plaintiff's counsel retained custody of the settlement check but did not cash it.
The defendant filed a motion to enforce settlement and requested dismissal of the lawsuit. The defendant contended that MGA had validly accepted the plaintiff's settlement demand by tendering the policy limits. The defendant maintained that the settlement documents were customary and did not amount to a counteroffer.
At the non-evidentiary hearing below, the plaintiff conceded that the request for a release was permissible and did not constitute a counteroffer. However, the plaintiff maintained that the demand for a hold harmless agreement and UM waiver amounted to a counteroffer.
The trial court granted the motion to enforce the settlement and dismissed the case. This appeal followed.
When a plaintiff demands the policy limits, the demand is necessarily subject to compliance with statutory and case law requirements. That is so even if the plaintiff makes no mention of such requirements in the demand for policy limits because the plaintiff must, as a matter of law, comply with applicable statutory and case law requirements.
Under our case law, when the plaintiff demands the policy limits, the defendant may insist upon the execution of the customary settlement documents. Nichols v. Martell, 612 So.2d 657, 658 (Fla. 3d DCA 1993). The defendant's tendering of the policy limits, along with customary settlement *1192 documents, is an acceptance, not a counteroffer. Id.; see also § 627.4265, Fla. Stat. (2005).
As already stated, the plaintiff conceded that she had an obligation to execute a release. If there is a dispute about whether the language contained in a release is customary, then the dispute over language is a matter to be resolved by the trial court, but the existence of such a dispute does not undo the settlement.
This takes us to the hold harmless agreement and the waiver of subrogation rights by the UM carrier. It is my understanding that provisions for satisfaction of hospital liens (which is what the hold harmless does), and waiver of subrogation rights, are customary in personal injury settlements. To paraphrase the Fourth District, it would make no sense for the insurer to tender its policy limits if there remained a possibility that it could still be liable for further claims arising from the same incident. See Erhardt v. Duff, 729 So.2d 529, 530 (Fla. 4th DCA 1999). These requests are reasonable and customary, and not a basis on which to say that MGA made a counteroffer.[*]
We should affirm the trial court's ruling. If the majority has doubts about what settlement documents are customary in this context, then at best there should be a remand for an evidentiary hearing on that issue.
Perhaps it should be mentioned that, at the original oral argument in this case, plaintiff's counsel was fairly direct in saying that this entire controversy stems from a desire to set the stage for a "bad faith" action against the insurer. Except for that fact, it seems clear this matter would have been resolved long ago. We should adopt rules which encourage, and do not thwart, settlements.
For the stated reasons, the order now before us should be affirmed.
NOTES
[*] At the hearing below, the plaintiff contended that her UM carrier likely would refuse to execute the waiver of subrogation rights. By statute, if the UM carrier refuses permission for the proposed settlement, then the UM carrier must pay the plaintiff the amount of the settlement. § 627.727(6)(b), Fla. Stat. (2005).