WARNER, J.
 

 The trial court granted a defendant’s motion to enforce settlement of a personal injury action, because it found that the insurance company had complied with the policy limit demand of the appellant/plaintiff. Because the release that the insurance company submitted with its payment was not a routine general release, we hold that the insurance company had not accepted the demand of the appellant. We reverse.
 

 Appellant filed a complaint for personal injury damages against Matthew Lyons, with whom appellant was involved in an automobile accident. Appellant then filed a time limit demand to Lyons’s insurance carrier, AIG, giving them twenty days to tender its policy limits. AIG sent a letter, before the twenty-day time limit, indicating that it elected to make a voluntary payment of its policy limits of $100,000 to resolve the matter, including with the letter a General Release and Hold Harmless Agreement along with a Stipulation for Dismissal to sign. The various papers included additional terms not included in the plaintiffs offer and unacceptable to the plaintiff. The release contained a provision that plaintiff release claims against other potential defendants. It required plaintiff to warrant that all hospital bills had been fully paid. It also contained a non-disclosure clause not agreed to by the plaintiff.
 

 In response, appellant’s lawyer sent a letter rejecting the counter-offer, claiming that because appellant’s medical bills were in the amount of $254,515.77, Lyons must pay an additional $500,000 before appellant would accept the AIG offer. Lyons filed a motion to enforce settlement, arguing that because AIG made a payment of its limits prior to the expiration of appellant’s demand, the agreement became enforceable. After a hearing, the trial court issued an order granting Lyons’s motion to enforce settlement pursuant to
 
 Erhardt v. Duff,
 
 729 So.2d 529 (Fla. 4th DCA 1999). This appeal follows.
 

 
 *710
 
 In
 
 Erhardt
 
 the plaintiff demanded the policy limits from the insurance company. The company responded by agreeing to tender its policy limits, stating “[u]pon receipt of your acceptance, we are prepared to forward our settlement drafts and Releases.”
 
 Id.
 
 at 530. Erhardt did not respond to this letter and instead filed suit, arguing that the insurance company’s letter was a counteroffer in that it conditioned acceptance on his execution of a release. The insurance company filed a motion to enforce settlement which was granted by the trial court, and Erhardt appealed. On appeal, we affirmed, finding that the insurance company’s letter was a valid acceptance in that it met both conditions of the offer — to tender the policy limits and to do so within a certain time frame. The execution of the release was found to be “implicit as part of the tender, and not an additional element of the agreement. ... [I]t would have made no sense for [the insurer] to tender its policy limits if there remained a possibility that it could still be liable for further claims by Erhardt arising from the same incident.”
 
 Id.
 

 Appellant’s attorney made the following demand to AIG:
 

 Our information reveals that your insured’s policy was in effect at the time of the accident. Therefore, given the extent of Mr. Grant’s injuries, we hereby demand that you tender AIG’s and your insured’s full policy limits within the next 20 days.
 

 AIG responded within ten days, with the following:
 

 As you know, AIG has elected to make a voluntary payment of its policy limits of $100,000.00 to your client to resolve the above-referenced matter. To that end, enclosed you will find the General Release and Hold Harmless Agreement along with a Stipulation for Dismissal. I would ask you to please have these documents executed as appropriate and return same to my office. Once I have provided AIG with your tax identification number they will be forwarding a check directly to your office.
 
 I would ask you to please hold those funds in t'rust until all settlement documents have been executed. I would also ask you to please make sure that all liens have been satisfied.
 

 Appellant’s attorney responded thereafter, with:
 

 Thank you so much for your phone call last week offering the $100,000 insurance policy limits. However, our client has outstanding medical bills to date in the amount of $254,515.77. Consequently, he is unable to accept the $100,000 tender unless he receives an additional $500,000 from your insured, who has personal assets sufficient to partially cover our client’s damages.
 

 In other words, the terms of acceptance of the money, particularly the satisfaction of all outstanding bills, were unacceptable to appellant.
 

 “[T]he acceptance of an offer which results in a contract must be absolute and unconditional, identical with the terms of the offer, and in the mode, at the place, and within the time expressly or impliedly stated within the offer. Thus, ‘[an] acceptance must contain an assent to the same matters contained in the offer.’ ”
 
 Cheverie v. Geisser,
 
 783 So.2d 1115, 1119 (Fla. 4th DCA 2001) (citation omitted). The burden is on the “party seeking judgment on the basis of compromise and settlement” to establish assent by the opposing party.
 
 Nehleber v. Anzalone,
 
 345 So.2d 822, 822 (Fla. 4th DCA 1977). Without assent or the meeting of the minds as to the essential terms contained in an offer, there is no valid acceptance.
 
 Nichols v. Hartford Ins. Co. of the Midwest,
 
 834 So.2d 217, 219 (Fla. 1st DCA 2002). Ac
 
 *711
 
 ceptances can turn into counteroffers either by adding additional terms or not meeting the terms of the original offer.
 

 Generally, an insurance company that accepts an offer can require the plaintiff to sign the “usual settlement documents.”
 
 Nichols v. Martell,
 
 612 So.2d 657, 658 (Fla. 3d DCA 1993). “Traditionally, general releases have included expansive language designed to protect the offeror from unforeseen developments or creative maneuvering by the other party.”
 
 State Farm Mut. Auto. Ins. Co. v. Nichols,
 
 932 So.2d 1067, 1079 (Fla.2006). As an example, “[a] document releasing an insurance company from liability for claims arising from the same incident for which the full policy limits were tendered, particularly where the injured party is permitted to modify such a release, is the kind of usual settlement document implicit in any settlement agreement.”
 
 Mercury Ins. Co. of Fla. v. Fonseca,
 
 3 So.3d 415, 417 (Fla. 3d DCA 2009).
 

 Where the release contains objectionable, not “usual” terms, no acceptance of the offer occurs. In
 
 Peraza v. Robles,
 
 983 So.2d 1189 (Fla. 3d DCA 2008), after the plaintiff made a policy limits demand, the insurance company replied agreeing to the payment and requiring that its check be held in escrow until the insurance company received “an unaltered release executed ... along with a copy of the U/M Carrier Authorization of Settlement and Waiver of Subrogation Rights.”
 
 Id.
 
 at 1190. While the trial court enforced the settlement, the Third District reversed concluding that the demand for the unaltered release with an objectionable hold-harmless clause did not constitute acceptance of the plaintiffs offer.
 
 [1]
 

 Here, the insurance company’s “acceptance” required all settlement documents to be executed and all liens to be satisfied prior to disbursement of the proceeds. Because the settlement documents included (1) a release of all persons liable to the plaintiff and not simply the insurance company and its insured; (2) a warranty that all hospital bills had been paid and none were outstanding; and (3) a nondisclosure and confidentiality agreement, the settlement contained more than the “usual” settlement terms. The insurance company’s response did not constitute an acceptance of the offer made by the plaintiff. The trial court erred in enforcing the settlement.
 

 Reversed.
 

 STEVENSON and DAMOORGIAN, JJ., concur.
 

 [1]
 

 . A demand not to alter customary settlement documents, however, would not constitute a counter-offer.