GRIFFIN, J.
 

 Ryan Trout [“Trout”] seeks review of a summary final judgment entered in favor of Appellees, James Apicella [“Apicella”] and Donald Medlar [“Medlar”] [“collectively Appellees”] after the trial court concluded that a binding settlement agreement was formed between the parties. On appeal, Trout contends that the trial court erred in concluding that the parties entered into a binding settlement agreement. We agree and reverse.
 

 Trout was seriously injured while a passenger in a truck operated by Apicella and owned by Medlar. The truck was insured by a Geico automobile insurance policy, issued to Medlar. The policy had a $100,000 limit for bodily injury liability per person, a $300,000 limit for bodily injury per occurrence, and a $50,000 limit for property damage liability. The Geico policy also provided uninsured motorist coverage and automobile medical payments coverage. Apicella was also covered by a Geico automobile insurance policy, which provided $100,000 in liability coverage for bodily injury damages.
 

 A day after the accident, Geico forwarded a letter to Trout, enclosing a check for $100,000. The check was made payable to Trout and the hospital where he was receiving medical treatment. Also enclosed were proposed releases of all claims. Trout obtained counsel, Ronald K. Zim-met, Jr. [“Zimmet”], who sent a letter to Geico confirming his representation of Trout and requesting that Geico forward a statement, under oath, pursuant to section 627.4137, Florida Statutes, concerning available insurance. The next day, Geico sent a letter to Zimmet, enclosing an “Affidavit of Coverage” and a copy of the insured’s insurance policy. Also enclosed were two checks to Trout for $100,000 each, representing the policy limits of the bodily injury liability coverage under both Medlar and Apicella’s policies.
 

 On April 8, 2008, a Geico representative sent a letter to Zimmet, enclosing amended proposed releases and stating that he was pleased the parties were able to reach an amicable settlement. In response, Zim-met wrote Geico advising that “NO SETTLEMENT HAD BEEN REACHED” and that much investigation and research remained undone. Zimmet also disputed Geico’s assertion that the new releases did not create any new terms or conditions, pointing out that the new release contained a new releasee, Richard Lecates, who was not on the original proposed release. On April 17, 2008, Zimmet sent a letter to Geico requesting a written statement that there was no excess or umbrella coverage for Apicella on this or any other policy.
 

 Geico responded by correspondence to Zimmet that Medlar did not have any excess insurance on the vehicle. This letter also represented that a Geico representative had spoken with Medlar, who confirmed that he did not have any excess
 
 *683
 
 insurance on the vehicle involved in the loss, nor did he have an umbrella policy.
 

 A few weeks later, Geico, again by correspondence, advised Zimmet that it had determined that Richard Lecates was not an insured on the policy and was not required to be on the release. The letter instructed Zimmet to revert to the previously provided original release.
 

 On July 30, 2008, Zimmet wrote to Gei-co, stating that Trout wished to resolve his uninsured motorist claim. The letter requested that Geico tender all of the company’s available uninsured motorist benefits within fifteen days of the date of the letter if Geico wished to settle. The letter also asked that Geico advise him if the company waived its rights of subrogation. Geico denied this demand based on its assertion that Trout was not entitled to UM coverage.
 
 [1]
 

 Zimmet sent another letter to Geico on October 31, 2008, containing an offer to settle:
 

 To begin with, according to the coverage itemization sheet you previously sent to my office, your company provides $10,000 of medical payments coverage under policy number 2011120652. However, I cannot verify the coverage from the insurance information that you sent to me or determine whether my client qualifies for the medical payments coverage. I have the attached coverage itemization sheet and a “Florida Family Automobile Insurance Policy” booklet so you can see what I have.
 

 Since my client was a passenger in an insured vehicle, presumably he would be entitled to medical payment benefits. But, as happened with the uninsured motorist coverage, your company may have a different position.
 

 I have also received your company’s replacement checks,.... If you need me to return the expired checks, please let me know.
 

 With respect to the release, you and another claim representative previously sent over two separate sets of release forms. In order to avoid any misunderstanding, my client will only sign one release.
 
 So just send me a single bodily injury release of your insureds only without any additional language that would require my client to pay their defense costs for claims by third parties. If I have valid checks for all bodily injury liability insurance available to your insureds, along with that release and the complete statutory insurance disclosures, within fifteen days of this letter, my client will sign the release and those claims will be settled.
 

 (Emphasis added).
 

 Geico responded to Zimmet’s October 31, 2008, letter on November 10, 2008, addressing several points. First, Geico took the position that Trout was not eligible for medical payments coverage because he was not a relative of Medlar or Apicella. The letter also acknowledged that Geico had previously sent two valid checks totaling $200,000 ($100,000 for each policy). Enclosed with the letter was a single, proposed, combined release. The release enclosed with the letter was titled “RELEASE OF ALL CLAIMS,” and, indeed, this document provided that Trout was releasing Medlar and Apicella from “any and all claims, demands, damages, actions, causes of action, or suits of any kind or nature whatsoever, on account of all inju
 
 *684
 
 ries and damages, known and unknown, which have resulted or may in the future develop as a consequence of a motor vehicle accident that occurred at Volusia County on or about the 80th of March, 2008.” Finally, the letter stated:
 

 Once again, not all release forms precisely fit the facts and circumstances of every claim. Should you have any questions about any aspect of the release terms, please call me immediately. You may also send me any suggested changes, additions or deletions with a short explanation of the basis of any change you suggest; or if you have a release that you desire to use, please forward it to me. We consider the enclosed proposed release a ministerial document which memorializes our settlement of this case on behalf of the insured party or parties.
 
 We do not consider the release a document which creates any new terms or conditions governing our resolution of your claim.
 
 If you feel there is any aspect of the enclosed document which does not reflect our settlement of your claim, please contact me immediately so that we can see that the document is revised to reflect the exact terms of our agreement.
 

 Finally, I am enclosing another copy of the complete statutory disclosures requested for both policies. A copy of the policy and A54 is included with the disclosures.
 

 (Emphasis added).
 

 On December 3, 2008, Zimmet informed Geico by letter that Trout had proceeded with filing suit due to Geico’s failure to timely accept his offer to settle. In the letter, Zimmet explained that Geico did not accept Trout’s offer because the tendered release was a release for all claims, which was not what Trout offered and because Geico failed to include with its response letter of November 10th the required statutory disclosures.
 

 After Trout filed suit, Appellees asserted the affirmative defense of settlement and release. A hearing was held on the cross-motions for summary judgment regarding the settlement affirmative defense. The trial court found that Geico properly accepted Trout’s offer in its November 10th response.
 

 Both parties are in agreement that, in Florida, settlement agreements are governed by the law of contracts.
 
 See Nichols v. Hartford Ins. Co. of the Midwest,
 
 834 So.2d 217, 219 (Fla. 1st DCA 2002);
 
 Williams v. Ingram,
 
 605 So.2d 890, 893 (Fla. 1st DCA 1992). It is basic to Florida contract law that the acceptance of an offer that results in an enforceable agreement must be (1) absolute and unconditional; (2) identical with the terms of the offer; and (3) in the mode, at the place, and within the time expressly or impliedly stated within the offer.
 
 Nichols,
 
 834 So.2d at 219;
 
 Chevene v. Geisser,
 
 783 So.2d 1115, 1119 (Fla. 4th DCA 2001). This is sometimes referred to as the “mirror image rule.”
 
 Montgomery v. English,
 
 902 So.2d 836, 837 (Fla. 5th DCA 2005). Although the law favors settlement agreements and their enforcement, the evidence must nevertheless demonstrate that there was mutual agreement to the material settlement terms.
 
 See Robbie v. City of Miami,
 
 469 So.2d 1384, 1385 (Fla.1985);
 
 Carroll v. Canvll,
 
 532 So.2d 1109 (Fla. 4th DCA 1988).
 

 Trout’s settlement offer was an offer for a unilateral contract that required performance by Geico.
 

 With respect to the release, you and another claim representative previously sent over two separate sets of release forms. In order to avoid any misunderstanding, my client will only sign one
 
 *685
 
 release.
 
 So just send me a single bodily injury release of your insureds only without any additional language that would require my client to pay their defense costs for claims by third parties. If I have valid checks for all bodily injury liability insurance available to your
 
 insureds,
 
 along with that release and the complete statutory insurance disclosures, within fifteen days of this letter, my client will sign the release and those claims will be settled.
 

 In granting summary judgment in favor of Geico, the trial court concluded that the proposed release of all claims was not a counter-offer because Geico’s November 10th letter indicated that Geico accepted the offer. The court particularly relied upon the language contained in the second paragraph of Geico’s letter that Geico was willing to change any of the wording within the release that Trout found objectionable or was willing to consider a release proposed by Trout. The trial court also rejected Trout’s argument that his reference to “complete statutory insurance disclosures” meant statutory affidavits of the insureds.
 

 The crux of the trial court’s ruling is its conclusion that Geico could accept Trout’s offer by merely offering to perform, but the language of the offer is clear. Trout’s offer to settle his bodily injury claim required that Geico provide Trout with the following items within fifteen days of the date of the offer: 1) valid checks for all bodily injury liability insurance coverage; 2) one release for the bodily injury claim only that released Geico’s insureds without any indemnification language; and 3) the complete statutory insurance disclosures. The offer made clear that in order to accept the offer, Geico had to meet all of the terms of the offer, and only then would the bodily injury claim be settled. Performance was an essential requirement for the acceptance of Trout’s offer. Instead of performing, however, Geico proffered a release that did not just fail to meet the terms of Trout’s offer, it blatantly failed. Not even Geico contends that a “Release of All Claims” was what Trout had offered. Geico’s offer to consider any release amendment and explanation Trout might suggest was inadequate and the disclaimer of “new terms” ineffective. Whether, ultimately, the $200,000 in bodily injury coverage may prove to be the only available coverage is beside the point. Trout had the absolute right to make an offer that preserved other claims and his counsel was prudent to do so. The burden of redlining, revising, redrafting or annotating the non-compliant release was not within Trout’s offer. Geico’s offer (probably) to change the release was, at best, a promise to perform, which is not sufficient here to create a binding contract. We cannot credit Geico’s contention that Trout’s offer was ineffective to require performance because it did not explicitly identify itself as a unilateral contract. The language of the offer communicates how it is to be accepted.
 

 This appeal is quite similar to another case we recently decided,
 
 Knowling v. Manavoglu,
 
 73 So.3d 301 (Fla. 5th DCA 2011). In that case, Allstate Indemnity Company similarly purported to accept an offer to settle a claim. There, the offer required a “general BI release,” “ready for signature.” Allstate instead tendered a release of all claims and an indemnification agreement, accompanied by a letter containing language similar to Geico’s, expressing that they did not consider the release to be a document creating any new terms or conditions. We held that the release tendered by Allstate did not meet the dictates of the offer and reversed the trial court’s decision that a settlement had been
 
 *686
 
 reached.
 
 [2]
 
 We reach the same conclusion here.
 

 REVERSED and REMANDED.
 

 SAWAYA and MONACO, JJ., concur.
 

 [1]
 

 . The trial court entered summary judgment in favor of Geico, concluding that under the Medlar policy, the truck and attached trailer were one insured vehicle and not two separate vehicles. Trout has filed an appeal of that court order, which is still pending before this Court.
 
 See Trout v. James Apicella,
 
 Case No. 5D10-2015.
 

 [2]
 

 . Also similar to the
 
 Knowling
 
 case, Trout contends that Geico failed to comply with his demand for the statutorily required insurance information in the form of affidavits of the insureds. As in
 
 Knowling,
 
 we do not need to reach that issue.