NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

DIANA PENA,                              )
                                         )
              Appellant,                 )
                                         )
v.                                       )        Case No. 2D14-3357
                                         )
MATTHEW RYAN FOX,                        )
                                         )
              Appellee.                  )
                                         )
_____  )

Opinion filed November 13, 2015.

Appeal from the Circuit Court for
Hillsborough County; William C. Levens,
Judge.

Joel D. Eaton of Podhurst Orseck, P.A.,
Miami, and Martin J. Hernandez of
Fernandez & Hernandez, LLC, Tampa,
and Welden E. Brennan of Brennan,
Holden & Kavouklis, P.A., Tampa,
for Appellant.

Mark D. Tinker, Charles W. Hall,
and DeeAnn J. Petika of Banker Lopez
Gassler, P.A., St. Petersburg, for Appellee.


LUCAS, Judge.

          Diana Pena appeals the circuit court's order dismissing her complaint

against Matthew Fox with prejudice.  Because the circuit court erroneously construed a

settlement agreement between the parties where none had been made, we reverse the court's order.

I.

This case invokes a hornbook tenet of contract law: the symmetry needed between an offer and an acceptance to establish an enforceable agreement. Ms. Pena and Mr. Fox were involved in an automobile accident on July 4, 2013, in which Ms. Pena allegedly sustained injuries. Prior to filing a lawsuit, Ms. Pena's counsel delivered a settlement offer to Mr. Fox's insurer, USAA Casualty Insurance Company. In her offer, Ms. Pena requested the policy limits from USAA in exchange for her release of all claims against Mr. Fox relating to the accident. The settlement offer contemplated that USAA would provide a proposed release form for Ms. Pena to execute, but it imposed certain conditions to that form which Ms. Pena's attorney addressed in detail in the offer letter:

> If USAA provides us all the information and funds requested above my [client] will sign a general release releasing all claims. . . . [M]y clients will sign a general release releasing all claims of my clients only. My clients will not accept, nor will they sign, a release containing a hold harmless nor an indemnity agreement, *nor will my client release any claim other than your insured's claim*; nor will my client release anyone's claim other than my client's claims. Therefore, *any attempt to provide a release* which contains a hold harmless or indemnity agreement, *which releases anyone other than your insured*, or which releases any claim other than my client's claim *will act as a rejection of this good faith offer*.

(emphasis supplied).

After receiving the offer, USAA tendered a settlement check along with a proposed release to Ms. Pena's counsel. The release prepared by USAA included a prefatory paragraph by which Ms. Pena would acknowledge receipt of the settlement

- 2 -

funds and would "release, acquit, and forever discharge <u>Matthew R Fox</u> his/her heirs, executors and assigns, from any liability." USAA's proposed release went on to state the following terms concerning Ms. Pena's release:

> I/We further state that while I/we hereby release all claims against Releasee(s), its agents, and employees, the payment hereunder does not satisfy all of my/our damages resulting from the accident . . . . I/We further reserve my/our right to pursue and recover all unpaid damages from any person, firm, or organization who may be responsible for payment of such damages, including first party health and automobile insurance coverage, but such reservation does not include the Releasee(s), its agents, and employees . . . .

Deeming the language "Releasee(s), its agents, and employees" as an attempt to expand the release to include USAA, Ms. Pena considered her prior offer rejected and proceeded to file a lawsuit against Mr. Fox. Mr. Fox responded by filing a Motion to Enforce Settlement, arguing Ms. Pena's complaint should be dismissed because it was barred by a settlement agreement.

The circuit court agreed with Mr. Fox that Ms. Pena's claim against him had been settled. In its Order Granting Defendant's Motion to Enforce Settlement and Dismissing the Case entered on May 28, 2014, the court recognized that USAA's proposed release included additional language about Mr. Fox's agents and employees, but it dismissed her concern about the effect of that language. According to the court, "the term Releasee refers to Matthew R. Fox." Under the court's reading of that term, the release's language was clear and there was no "nefarious inclusion" of Mr. Fox's insurer. The court dismissed Ms. Pena's complaint with prejudice, and Ms. Pena timely appealed.

II.

- 3 -

Settlement agreements are governed by contract law. Gira v. Wolfe, 115 So. 3d 414, 417 (Fla. 2d DCA 2014); Schlosser v. Perez, 832 So. 2d 179, 182 (Fla. 2d DCA 2002). Like any contract, a settlement agreement is formed when there is mutual assent and a "meeting of the minds" between the parties—a condition that requires an offer and an acceptance supported by valid consideration. See Perkins v. Simmons, 15 So. 2d 289, 290 (Fla. 1943) ("The parties must mutually assent to each of the terms and conditions of both the offer and the acceptance in order to be a meeting of the minds and the closing of a lawful and binding contract."); Leesburg Cmty. Cancer Ctr. v. Leesburg Reg'l Med. Ctr., 972 So. 2d 203, 206 (Fla. 5th DCA 2007) ("We start with the basic premise that no person or entity is bound by a contract absent the essential elements of offer and acceptance . . . supported by consideration."). Florida law further requires that "an acceptance of an offer must be absolute and unconditional, identical with the terms of the offer." Ribich v. Evergreen Sales & Servs., Inc., 784 So. 2d 1201, 1202 (Fla. 2d DCA 2001) (citing Sullivan v. Econ. Research Props., 455 So. 2d 630, 631 (Fla. 5th DCA 1984)). That is, the acceptance must be a "mirror image" of the offer in all material respects, or else it will be considered a counteroffer that rejects the original offer. See, e.g., Trout v. Apicella, 78 So. 3d 681, 684-85 (Fla. 5th DCA 2012) (applying mirror image rule to hold that insurer's proposed release of all claims rejected plaintiff's offer, which was limited to release of bodily injury claims); Peraza v. Robles, 983 So. 2d 1189, 1189 (Fla. 3d DCA 2008) (determining that insurer's inclusion of a proposed hold harmless agreement and subrogation waiver release "constituted a separate additional requirement that conditioned the settlement on the submission of the requested documents," which acted as a counteroffer and rejection of plaintiff's

original settlement offer). An attempted acceptance can become a counteroffer "either by adding additional terms or not meeting the terms of the original offer." Grant v. Lyons, 17 So. 3d 708, 711 (Fla. 4th DCA 2009).

The release USAA delivered appears to have done both: it added parties beyond those Ms. Pena proposed to release in her original offer, and it materially deviated from the limitation Ms. Pena's offer clearly expressed. The proposed release specifically releases Mr. Fox, his heirs, executors, and assigns in its first paragraph but then in another inexplicably shifts its reference to "Releasee(s)," a term that is nowhere defined within the document. Assuming, as the parties have, that Mr. Fox, his heirs, executors, and assigns, and "Releasees" are all one and the same, USAA's release goes on to expand the latter term to include Mr. Fox's "agents and employees," who are also left undefined and otherwise unidentified within the release. Presumably, the release's inclusion of "agents and employees" meant someone other than the "Releasee(s)" or Matthew R. Fox. Cf. Hillsborough Cty. Aviation Auth. v. Cone Bros. Contracting Co., 285 So. 2d 619, 621 (Fla. 2d DCA 1973) (holding that in interpreting a contract, "it must be assumed that each clause has some purpose"). Although the incongruity in terms may have been nothing more than boilerplate migrating across computer-generated files, nevertheless, "agents and employees" was a new term, and it was a part of USAA's response to Ms. Pena's offer. And that offer had been explicit: Ms. Pena would not agree to release any party other than Mr. Fox.[1]

---

[1] Mr. Fox does not argue that his proposed release was merely a "usual settlement document" to be executed in the ordinary course of settling a personal injury claim. Cf. Peraza, 983 So. 2d at 1190 (noting exception to mirror image rule where "usual settlement documents" are "implicit" in a settlement); Erhardt v. Duff, 729 So. 2d 529, 530 (Fla. 4th DCA 1999) (holding that where injured plaintiff's offer only required

While we share the circuit court's view that the inclusion of Mr. Fox's agents and employees within the release was not the product of nefarious motives, USAA's intention when it drafted this document, whatever it might have been, was irrelevant to the issue at hand. Cf. Gendzier v. Bielecki, 97 So. 2d 604, 608 (Fla. 1957) ("The making of a contract depends . . . on the agreement of two sets of external signs—not on the parties having meant the same thing but on their having said the same thing." (quoting Justice O. W. Holmes, The Path of the Law, 10 Harv. L. Rev. 457, 464 (1897))); Villareal v. Eres, 128 So. 3d 93, 100 (Fla. 2d DCA 2013) (holding that no settlement agreement was formed where insurer's proposed releases deviated from settlement offer's terms, noting "[i]t is the presence of the language in the proposed releases, not the effectiveness of the terms themselves, that [did] not comply with the offer"); Akileh v. Elchahal, 666 So. 2d 246, 249 (Fla. 2d DCA 1996) (holding that husband's "subjective intent" at the time he entered into a marital settlement agreement "is not material in construing the contract"). The words are what matter because they will control who will, or will not, be released. Gendzier, 97 So. 2d at 608 ("The writing itself is the evidence of what [the parties] meant or intended by signing it."); Prestige Valet, Inc. v. Mendel, 14 So. 3d 282, 283 (Fla. 2d DCA 2009) ("The contracting parties' intent is determined from within the four corners of the document and construed in accordance with the agreement's plain meaning."). Mr. Fox's proposed acceptance

tender of a check for a policy's limits, insurer's inclusion of a release to be executed did not constitute a counteroffer or rejection of that offer). Given Ms. Pena's offer's explicit limitation for the scope of the release, and USAA's expansion of that scope in its response, it would be a far stretch to characterize this as a term of implicit understanding between these parties.

- 6 -

would release additional parties, Mr. Fox's agents and employees, which Ms. Pena's offer would not. His acceptance did not mirror her offer.

III.

Reading Ms. Pena's offer and Mr. Fox's acceptance together, we conclude there was no meeting of the minds between these parties, and, thus, there was no settlement agreement that barred Ms. Pena's claims. See Villareal, 128 So. 3d at 100; Trout, 78 So. 3d at 681; Peraza, 983 So. 2d at 1189. Accordingly, we reverse the order dismissing the complaint and remand this case for further proceedings.

Reversed and remanded.

KHOUZAM and BADALAMENTI, JJ., Concur.