**U.S. COMMODITY FUTURES TRADING COMMISSION,** Plaintiff,

v.

**VISION FINANCIAL PARTNERS, LLC, et al., Defendants,**

and

**Prometheus Enterprises, Inc., et al., Relief Defendants.**

**CASE NO. 16–60297–CIV–COHN/SELTZER**

United States District Court, S.D. Florida.

Signed February 7, 2017

Filed February 8, 2017

Elizabeth Lan Davis, Nia Vroustouris, Washington, DC, for Plaintiff.

Howard Seth Goldfarb, Peter W. Homer, Homer Bonner Jacobs, P.A., Miami, FL, for Defendants.

## ORDER GRANTING DEFENDANTS AND RELIEF DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

JAMES I. COHN, United States District Judge

**THIS CAUSE** is before the Court upon Defendants Vision Financial Partners, LLC and Neil Pecker and Relief Defendants' Prometheus Enterprises, Inc. and GDCM Trust (collectively, "Defendants") Motion to Enforce Settlement Agreement

("Motion") [DE 101.] The Court has considered the Motion, Plaintiff U.S. Commodity Futures Trading Commission's ("CFTC") Response [DE 108], Defendants' Reply [DE 111], the evidence presented at the evidentiary hearing held on February 3, 2017, the arguments of counsel, and is otherwise fully advised in the premises.

## I. Background

Defendants contend that on October 24, 2016, after several mediations and months of settlement negotiations, the CFTC's counsel presented defense counsel with a finalized consent order ("Consent Order") and agreed that if Defendants signed and returned the Consent Order by October 31, 2016, the CFTC's counsel would submit and recommend same for approval by the CFTC's Commissioners.[1] [DE 101 at 2.] Defendants allege that although they signed and timely provided the Consent Order—unchanged—to Division counsel, the Division refused to submit the Consent Order to the CFTC's Commissioners for approval unless the Defendants submitted an executed financial disclosure statement ("Disclosure Statement"). [Id. at 3]

The Consent Order itself makes no mention of the Disclosure Statement, and Defendants contend that on August 3, 2016, they advised Division counsel that they would not be completing or submitting the Disclosure Statement. [Id.] Settlement negotiations then continued and Defendants claim that the Disclosure Statement was not mentioned again until after Defendants signed the finalized Consent Order and provided same to the Division. [Id.] Thus, Defendants characterize the Division's request for the Disclosure Statement as "an after-the-fact and non-essential condition of settlement," and seek to enforce the counsel-to-counsel agreement they claim was reached by requiring the Division to submit and recommend the Consent Order for approval by the CFTC's Commissioners. [Id. at 4, 7.] The CFTC argues in response that Defendants have failed to meet their burden of showing assent to an agreement whereby the Division would submit the Consent Order to the CFTC's Commissioners for approval absent Defendants' submission of the Disclosure Statement. [DE 108 at 13–14.]

At the evidentiary hearing, two witnesses provided testimony: Howard Goldfarb, counsel for Defendants, and Eugenia Vroustouris, counsel for the CFTC. At the conclusion of the hearing, the Court announced on the record that it would grant the Motion and require the Division to submit and recommend the Consent Order for approval by the CFTC's Commissioners by no later than the close of business on Friday, February 17, 2017.[2] This Order memorializes the Court's decisions and the reasons for it.

## II. Findings of Fact

Based upon the testimony and exhibits presented at the evidentiary hearing, the court makes the following finding of facts relevant to the Motion.[3]

---

1. Defendants concede that the CFTC's counsel in this case lack final settlement authority. The CFTC's counsel are part of the CFTC's Division of Enforcement ("Division"), which makes settlement recommendations to the CFTC's Chairman and Commissioners, who can then ultimately accept or reject a proposed settlement. [See, e.g., DE 112 at 6–7 n.2.]

2. The Court has since granted the CFTC's Motion for Extension of Time and permitted the CFTC two weeks from the date of this Order to submit and recommend the Consent Order for approval by the CFTC's Commissioners. [DE 124.]

3. To the extent that the Findings of Fact are more properly characterized as Conclusions of Law and vice versa, the Court intends that they be considered as such.

Settlement negotiations began in earnest in this case after a July 13, 2016 mediation before Magistrate Judge Barry Garber. Mr. Goldfarb, Ms. Vroustouris, and Elizabeth Davis[4] met for approximately one hour to discuss various discovery matters, and to continue the settlement dialogue that had started at mediation. Mr. Goldfarb advised that Defendants were unable to pay the entirety of the monetary relief sought by the CFTC, and although Ms. Vroustouris questioned the veracity of this assertion, Mr. Goldfarb was advised that his clients' inability to pay would not necessarily be an impediment to settlement. Ms. Davis explained that when a defendant claims an inability to pay the monetary relief sought by the CFTC, the CFTC requires the defendant to complete and execute the Disclosure Statement. Mr. Goldfarb requested that Ms. Vroustouris and Ms. Davis provide him with a draft consent order containing all of the Division's proposed terms of settlement.

On July 22, 2016, Ms. Vroustouris emailed Mr. Goldfarb a sample draft consent order as well as the Disclosure Statement, noting that she was attaching the Disclosure Statement "[a]lthough the CFTC maintains that your client Neil Pecker has funds to pay a [civil monetary penalty] and restitution in this matter." [Exhibit 3.][5] Mr. Goldfarb emailed Ms. Vroustouris a revised proposed consent order on August 3, 2016. [Exhibit 6.] That same day, after emailing Ms. Vroustouris, Mr. Goldfarb called her and spoke with her about settlement generally, as well as the Division's reasons for transmitting the Disclosure Statement. Mr. Goldfarb asked whether the information provided in the Disclosure Statement would be used in some capacity to determine the monetary amount of settlement. Ms. Vroustouris informed Mr. Goldfarb that the Disclosure Statement would not be used to determine the monetary amount of settlement, but that the CFTC requires the Disclosure Statement when a defendant claims an inability to pay in order to assess collectability. In response, Mr. Goldfarb advised that given the CFTC's intended use of the Disclosure Statement and because it would not impact the terms of the Consent Order, Defendants would not be completing or submitting the Disclosure Statement to the CFTC as part of settlement. Ms. Vroustouris nevertheless encouraged Mr. Goldfarb to have his clients complete the Disclosure Statement.

After the August 3, 2016 phone conversation between Mr. Goldfarb and Ms. Vroustouris, there was no further discussion of the Disclosure Statement until after the parties had agreed on the Consent Order and Defendants had signed and provided same to the Division on October 31, 2016.[6] The parties exchanged numerous emails and engaged in several telephone calls related to settlement during this time, including an August 5, 2016 call between Mr. Goldfarb and Ms. Vroustouris regarding the Consent Order. After that call, Ms. Vroustouris suggested rescheduling an evidentiary hearing then set for August 15, 2016 while the parties continued to discuss settlement. [Exhibit 10.] In response, Mr. Goldfarb advised that the parties should

---

4. Ms. Davis represents the CFTC in this matter, and like Ms. Vroustouris, is a part of the Division.

5. Unless otherwise noted, exhibit references are to Defendants' evidentiary hearing exhibits.

6. The Consent Order contains a merger and integration clause, which provides that the Consent Order contains the entire terms of settlement between the parties. [Exhibit 67 ¶ 68.]

seek a stay of all proceedings but only "after we have reached agreement (at least in principle) on the material terms of settlement, which includes monetary relief and the language both parties believe to be non-negotiable . . ." [Exhibit 11.]

On August 9, 2016, Mr. Goldfarb and Ms. Vroustouris engaged in a telephone conversation during which they were able to reach a settlement in principle. [Exhibit 16.] The next day, the parties filed their Joint Motion to Stay Proceedings Pending Finalization of Proposed Settlement. [DE 83.] In their Joint Motion, the parties represented to the Court that they had "reached an agreement in principle as to the terms that would resolve all claims asserted in the Complaint against Defendants and Relief Defendants without a trial on the merits or any further judicial proceedings." [Id. ¶ 5.] The parties further represented that they were "in the process of finalizing a proposed Consent Order, having spent considerable time drafting mutually agreeable language reflecting the Parties' agreement in principle, and anticipate that they will reach final agreement on the proposed Consent Order shortly. If the settlement is finalized and signed by Defendants and Relief Defendants, the Division will recommend the settlement to the Commission for its approval." [Id. ¶ 6] (emphasis added). That same day, on August 10, 2016, the Court granted the parties' Joint Motion and stayed the case. [DE 84.]

The Order staying the case required the parties to submit weekly joint status reports until either party moved to reopen case or filed appropriate dismissal papers. [Id.] From August 15 to October 31, 2016, the parties filed joint status reports regarding the continued progress of their settlement negotiations. [DE 85–96.] The parties noted that the language of the proposed Consent Order was "in the pro-

cess of being finalized for purposes of submission by the Commission's Division of Enforcement to the Commission for approval." [See, e.g., DE 85–88.] On September 6, 2016, the parties represented to the Court that the Division had provided defense counsel with "a proposed Consent Order that the Division of Enforcement is prepared to recommend for Commission approval." [DE 88.]

On October 24, 2016, Ms. Vroustouris emailed Mr. Goldfarb the finalized Consent Order. [Exhibit 67.] Mr. Goldfarb had previously sent Ms. Vroustouris six revisions to the prior draft of the Consent Order, and Ms. Vroustouris noted that the finalized version of the Consent Order she was attaching to her email included four of Mr. Goldfarb's "suggested changes that are acceptable to the Commission." [Id.] In her email, Ms. Vroustouris invited Mr. Goldfarb to call her to discuss the Consent Order if he wished, but to "[o]therwise, please send a signed copy back to me as soon as possible, no later than Monday, October 31st." [Id.] That same day, Mr. Goldfarb replied to Ms. Vroustouris' email and attached a proposed status report advising that the parties expected to submit a finalized consent order to the CFTC's Commissioners by October 31, 2016. [Exhibit 68.] In response, Ms. Vroustouris asked that Mr. Goldfarb revise the proposed status report to state that submission of the finalized Consent Order to the Division was expected by October 31, 2016, and that the parties could "then update the status report when we actually send it to the Commission for final approval." [Exhibit 69.] On October 31, 2016, Mr. Goldfarb sent the signed Consent Order to Ms. Vroustouris, as well as a proposed joint status report "reflect[ing] that Defendants . . . have provided the Division of Enforcement with a signed Consent Order and now await Commission approval." [Exhibit 72.] Ms. Vroustouris approved the lan-

guage of the proposed joint status report, and Mr. Goldfarb filed it with the Court on October 31, 2016. [DE 96.]

The next day, Ms. Vroustouris emailed Mr. Goldfarb and asked: "can you send me the financial disclosure form so I can get the ball rolling here?" [Exhibit 77.] Less than 24 hours later, on November 2, 2016, Mr. Goldfarb replied to Ms. Vroustouris that "when you previously requested this information I told you my clients were not going to voluntarily complete the [Disclosure Statement] ..." and that this was still Defendants' position. [Exhibit 78.] Ms. Vroustouris replied the next day, and without disputing Mr. Goldfarb's assertion that he had previously refused to provide the Disclosure Statement, stated to Mr. Goldfarb that "[a]s you know, our policy requires Defendants who claim they cannot pay [civil monetary penalty], restitution, etc., to fill out the financial disclosure for settlement purposes." [Exhibit 79.] Ms. Vroustouris then suggested that the parties advise the Court in their next joint status report that settlement negotiations had failed. [Id.] Mr. Goldfarb stated in response that he was "unaware of any CFTC policy that requires settling defendants to complete voluntary financial disclosures in order to enter into a consent judgment" and asked that Ms. Vroustouris provide him with a copy of the policy. [Exhibit 80.] The CFTC maintains that this policy is privileged, and as such, has not provided same to Defendants.[7]

On November 7, 2016, the parties submitted separate status reports notifying the Court that they had reached an impasse. [DE 97 and 98.] The next day, the CFTC moved to lift the stay and requested a status conference. [DE 99.] The Court lifted the stay on November 23, 2016 and set a status conference for December 1, 2016. [DE 100.] Subsequent to the Court lifting the stay, but prior to the December 1, 2016 status conference, Defendants moved to enforce the settlement agreement allegedly reached between the parties. [DE 101.] At the December 1, 2016 status conference, the Court set the evidentiary hearing on Defendants' Motion for February 3, 2017. [DE 104 and DE 105.]

### III. Conclusions of Law

 The Court has jurisdiction to enforce a settlement agreement where, as here, one party refuses to abide by the agreement and the action has not yet been dismissed. Kent v. Baker, 815 F.2d 1395, 1399–1400 (11th Cir.1987). Typically, in determining whether an enforceable settlement agreement exists, the Court must resolve two legal questions: first, whether counsel had "clear and unequivocal authority" to enter into a binding settlement agreement; and second, whether a binding agreement was reached under principles of contract law. Vital Pharm., Inc. v. S.A.N. Nutrition Corp., 06–60646–CIV–COHN, 2007 WL 1655421, at *4 (S.D. Fla. June 6, 2007). Here, however, Defendants concede that the CFTC's counsel in this case lacked final settlement authority and as such, do not seek enforcement of the Consent Order itself, but rather, enforcement of an alleged counsel-to-counsel agreement whereby the CFTC's counsel would submit the Consent Order to the CFTC's Commissioners for approval. Thus, the Court's

---

7. The Court reviewed the policy [CFTC's Exhibit 3] in camera at the evidentiary hearing and held that (1) it is privileged under the government deliberative process privilege and (2) that this privilege has not been waived by the CFTC. The Court also found, however, that the policy does not require the Defendants' submission of the Disclosure Statement as a condition to the Division submission of the Consent Order to the CFTC's Commissioners.

inquiry is limited to whether such an agreement was reached under principles of Florida contract law. See Ford v. Citizens & S. Nat. Bank, Cartersville, 928 F.2d 1118, 1120 (11th Cir. 1991) (noting that state law "governs both the construction of the settlement agreement and the attorney's authority to enter into that agreement on behalf of his client.").

■■ "[I]n Florida, the objective test is used to determine whether such a contract is enforceable. The party seeking enforcement of a settlement agreement has the burden of establishing assent by the opposing party." Vital Pharm., Inc. v. S.A.N. Nutrition Corp., 06–60646–CIV–COHN, 2007 WL 1655421, at *6 (S.D. Fla. June 6, 2007) (internal citations omitted). For an agreement to be binding, "mutual assent as to all essential terms is required." Knowling v. Manavoglu, 73 So.3d 301, 303 (Fla. 5th DCA 2011). "The definition of 'essential term' varies widely according to the nature and complexity of each transaction and is evaluated on a case-by-case basis." Nichols v. Hartford Ins. Co. of the Midwest, 834 So.2d 217, 219 (Fla. 1st DCA 2002).

■■ It is clear here that the Disclosure Statement was not an essential element of the parties' agreement regarding submission of the Consent Order, and that there was mutual assent as to all essential elements of an agreement whereby, if Defendants executed the Consent Order and returned same to the Division by October 31, 2016, the Division would submit and recommend the Consent Order for approval by the CFTC's Commissioners. The Disclosure Statement was discussed early in the parties' settlement negotiations, and Mr. Goldfarb informed Ms. Vroustouris that his clients would not be completing or submitting the Disclosure Statement. While the Division may have still subjectively intended to require the submission of the Disclosure Statement, "it is not what

the parties meant but what they said that is determinative." Villareal v. Eres, 128 So.3d 93, 100 n.5 (Fla. 2d DCA 2013). See also Cabrera v. Outdoor Empire Inc., 134 So.3d 573, 577 (Fla. 1st DCA 2014) (quoting Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp., 302 So.2d 404, 407 (Fla.1974)) ("the formation of a contract 'depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs—not on the parties having meant the same thing but on their having said the same thing.' ").

Based on the intentions of the parties as they were actually expressed in this case, there was mutual assent as to all essential terms of an agreement to submit the Consent Order to the CFTC's Commissioners. And under the circumstances presented here, the Disclosure Statement was not an essential term of this agreement. After Mr. Goldfarb refused to provide the Disclosure Statement on August 3, 2016, it was not mentioned again over the course of the approximately three months of settlement negotiations that followed, during which time the parties agreed upon the terms of the Consent Order, which contained a merger clause. Moreover, the parties' communications amongst each other and their joint representations to the Court indicated that if they were able to mutually agree upon the language of the Consent Order, the Division would submit and recommend same to the CFTC's Commissioner's for approval.

For instance, in the parties' Joint Motion to Stay, they expressly represented that "[i]f the settlement is finalized and signed by Defendants and Relief Defendants, the Division will recommend the settlement to the Commission for its approval." [DE 83 ¶ 6.] What's more, the parties specifically withheld filing the Joint Motion to Stay until they had reached an agreement in principle "on the material

terms of settlement," which obviously did not include an agreement on the Disclosure Statement. [Exhibit 11.] Then, after the case was stayed, the parties represented to the Court that the Division had provided defense counsel with "a proposed Consent Order that the Division of Enforcement is prepared to recommend for Commission approval." [DE 88.] There was no qualification on any of the above that the Division's recommendation would only be forthcoming if Defendants reversed their previously articulated position that they would not provide the Disclosure Statement.

Nor were there any such qualifications in the parties' communications amongst each other. For example, even after the language of the Consent Order was finalized and the parties were necessarily contemplating the next steps for finalizing settlement, the Division did not renew or otherwise remind Defendants of its request for the Disclosure Statement at any point prior to the Defendants' submission of the executed Consent Order. Rather, after providing Defendants with the Consent Order, the Division stated that after Defendants executed and returned the Consent Order, the parties could then update the Court "when," not if, "[the parties] actually send [the Consent Order] to the Commission for final approval." [Exhibit 69.] The Division then acknowledged that after Defendants' executed and returned the Consent Order, Defendants were simply "await[ing] Commission approval." [Exhibit 72.]

The Eleventh Circuit has held that in applying the objective test to determine whether an enforceable contract exists, the "million-dollar question" is "[w]hat did the party say and do?" Kolodziej v. Mason, 774 F.3d 736, 743 (11th Cir. 2014) (applying Florida law). Here, given the Division's words and actions, and "considering all of the attendant circumstances in this case," id. the Court concludes that there was mutual assent to all essential terms of an agreement whereby, if Defendants executed and returned Consent Order by the Division's deadline, the Division would submit and recommend same for approval by the CFTC's Commissioners.

For the same reasons, the Court also concludes that Defendants' submission of the Disclosure Statement was not an essential element of this agreement. As in Kolodziej, the Court's conclusions are buttressed by "what both parties did not say and did not do." Id. Specifically, the Division's arguments that the Disclosure Statement is an essential requirement of settlement are belied by the fact that it was not mentioned during months of settlement negotiations. Finally, the Court's conclusions are further supported by the Division's written policy regarding the Disclosure Statement, which again, the Court finds does not condition the Division's submission of the Consent Order to the CFTC's Commissioners on Defendants providing the Disclosure Statement to the Division.

## IV. Conclusion

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendants Vision Financial Partners, LLC and Neil Pecker and Relief Defendants' Prometheus Enterprises, Inc. and GDCM Trust Motion to Enforce Settlement Agreement [DE 101] is **GRANTED**. Plaintiff shall submit and recommend the consent order signed by Defendants for approval by the CFTC Commissioners within two weeks from the date of this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 7th day of February, 2017.