# Third District Court of Appeal

## State of Florida

Opinion filed February 27, 2019.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D17-0200
Lower Tribunal No. 09-3544

————————————

## Vision Palm Springs, LLLP,
Appellant,

vs.

## Michael Anthony Company, Michael Paolercio, Anthony Paolercio, Hugo Liberti, Palm Springs Town Homes, LLC, Coscan Palm Springs, LLC, Coscan Homes, LLC, Coscan Corporate Holdings, LLC, Albert C. Piazza, and Michael R. Neal,
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Eric William Hendon, Judge.

Hall, Lamb, Hall & Leto, P.A., and Matthew P. Leto, and Vanessa Palacio, for appellant.

Akerman LLP, and Carrie Ann Wozniak (Orlando), and Jonathan S. Robbins (Ft. Lauderdale), for appellees Coscan Palm Springs, LLC, Coscan Homes, LLC, Coscan Corporate Holdings, LLC, Albert C. Piazza, and Michael R. Neal.

Before SALTER,[1] FERNANDEZ, and LINDSEY, JJ.

LINDSEY, J.

---

[1] Judge Salter did not participate in Oral Argument.

Vision Palm Springs, LLLP ("Vision") appeals the trial court's December 27, 2016 Order Granting the Coscan Defendants' Motion to Enforce Settlement Agreement. Because we find, based on the undisputed evidence below, that the Coscan Defendants did not meet their burden to prove that the parties reached an agreement, we reverse and remand for further proceedings.

## I.   FACTUAL AND PROCEDURAL HISTORY

Vision originally filed the underlying action in 2009 against Coscan Palm Springs, LLC; Coscan Homes, LLC; Coscan Corporate Holdings, LLC; Albert C. Piazza; and Michael R. Neal (collectively "Coscan" or the "Coscan Defendants"), following a failed real estate deal.[2] After several years of litigation, the parties began to discuss settlement. However, these discussions culminated in a disagreement over whether the parties had reached a binding and enforceable settlement agreement.

On September 30, 2015, the Coscan Defendants filed their Motion to Enforce Settlement Agreement ("Motion to Enforce"). At the evidentiary hearing, the only evidence presented consisted of emails between counsel for the parties as well as the deposition of Meryl Sidikman ("the adjuster"), the representative of Coscan's insurance carrier, Chubb Insurance Group ("Chubb" or "the carrier"). Although Chubb was not a party to the settlement, it was going to fund $275,000.00 of the settlement proceeds. On December 27, 2016, the trial court entered an order granting

_____

[2] Vision also filed suit against Michael Anthony Company; Michael Paolercio; Anthony Paolercio; Hugo Liberti; and Palm Springs Town Homes, LLC, but these other defendants were not parties to the settlement agreement at issue here.

2

Coscan's Motion to Enforce and imposing its own effective date of the settlement. This timely appeal follows.

## II.    JURISDICTION

This Court has jurisdiction pursuant to Florida Rule of Appellate Procedure 9.030(b)(1)(A). See Travelers Indem. Co. v. Walker, 401 So. 2d 1147, 1149 (Fla. 3d DCA 1981) (holding that a trial court's order enforcing a settlement is a final, appealable order when there is nothing left for the court to do, other than to enforce what the order required of the parties).

## III.    STANDARD OF REVIEW

"Settlements . . . are governed by the rules for interpretation of contracts." Robbie v. City of Miami, 469 So. 2d 1384, 1385 (Fla. 1985) (citing Dorson v. Dorson, 393 So. 2d 632 (Fla. 4th DCA 1981)). Contract formation requires a manifestation of mutual assent,[3] the existence of which is determined by an objective test. Id. A trial court's finding of mutual assent "must be supported by competent substantial evidence." Cheverie v. Geisser, 783 So. 2d 1115, 1119 (Fla. 4th DCA 2001) (citing Roggio-Wilgus v. Marlin, 699 So. 2d 1050, 1050 (Fla. 4th DCA 1997)). Moreover, the party seeking to enforce a settlement bears the burden of

---

[3] This element of agreement is also sometimes referred to as a "meeting of the minds." See Restatement (Second) of Contracts § 17 (Am. Law. Inst. 1981) (explaining that although "parties to most contracts give actual as well as apparent assent, . . . it is clear that a mental reservation of a party to a bargain does not impair the obligation he purports to undertake").

3

establishing assent by the opposing party.  Id. (citing Nehleber v. Anzalone, 345 So. 2d 822 (Fla. 4th DCA 1977)).

## III.    ANALYSIS

The sole issue on appeal is whether the Coscan Defendants met their burden in the trial court to prove that the parties had reached a valid and binding settlement agreement.  Based on the undisputed record evidence before us, we find that they did not.

Preliminary negotiations do not establish a sufficient manifestation of mutual assent to create an enforceable settlement agreement.  Jaffe v. Jaffe, 147 So. 3d 578 (Fla. 3d DCA 2014) (citing Cheverie, 783 So. 2d at 1118).  "To be judicially enforceable, a settlement 'must be sufficiently specific and mutually agreeable as to every essential element.'"  Id. (quoting Grimsley v. Inverrary Resort Hotel, Ltd., 748 So. 2d 299, 301 (Fla. 4th DCA 1999)).

It is axiomatic under Florida contract law "that the acceptance of an offer that results in an enforceable agreement must be (1) absolute and unconditional; (2) identical with the terms of the offer; and (3) in the mode, at the place, and within the time expressly or impliedly stated within the offer."  Trout v. Apicella, 78 So. 3d 681, 684 (Fla. 5th DCA 2012); see also Hanson v. Maxfield, 23 So. 3d 736, 739 (Fla. 1st DCA 2009) ("An acceptance of a settlement offer will be effective to create a binding settlement only if it is absolute, unconditional, and identical with the terms of the offer."); Sorocka v. Severe, 858 So. 2d 388, 389 (Fla. 3d DCA 2003) ("An

4

acceptance is effective to create a contract only if it is absolute and unconditional, and identical with the terms of the offer."). Thus, unless an acceptance is the "mirror image" of the offer in all material respects, it is treated as a counteroffer that rejects the original offer. Pena v. Fox, 198 So. 3d 61, 63 (Fla. 2d DCA 2015); see also Padron v. Plantada, 632 So. 2d 113 (Fla. 3d DCA 1994).

With these basic contract principles in mind, we consider the following undisputed evidence that was presented to the trial court at the hearing on Coscan's Motion to Enforce:

- June 16, 2015 – Coscan's counsel emailed Vision's counsel offering to settle the case for $275,000.00.

- June 17, 2015 – Vision's counsel emailed Coscan's counsel accepting the $275,000.00 pending "confirmation of the overall deal" by a third party who would be sharing in the proceeds of the insurance funds and other funds that were subject to a *supersedeas* bond in a separate action pending in Palm Beach County.[4]

- June 17, 2015 – Coscan's counsel emailed the insurance adjuster, Meryl Sidikman, to inform her that Vision had accepted the $275,000.00 offer subject to the approval by the third party and his clients. In response, Ms. Sidikman acknowledged the email and thanked him for his "hard work."[5]

---

[4] See infra note 7.

[5] Significantly, this was the last communication between the insurance adjuster and Coscan's lawyer until September, 2015. Ms. Sidikman deposition testimony was as follows:

> Q: After the email which is dated June 17, 2015 where you thanked Mr. Robbins for getting the settlement done, when was the next conversation that took place in regards to the settlement with Mr. Robbins?
>
> A: I believe the last time I spoke to Mr. Robbins about this case was on June 15th.

5

- June 23, 2015 to September 8, 2015 – Ms. Sidikman took a leave of absence from her position with Chubb.

- June 26, 2015 at 11:38 a.m. – Counsel for co-defendant, Palm Springs Town Homes, emailed counsel for all parties asking that they "hold off getting signatures just yet" and identified several revisions to the settlement agreement requested by the parties, including (1) a change to when a satisfaction of judgment must be filed; (2) a modification to the release to make clear that Vision may continue to sue the sellers who were not parties to the agreement; and (3) clarifications to the language in the release.

- June 26, 2015 at 2:14 p.m. – Coscan's counsel raised concerns that the proposed releases were insufficient to protect his clients from being brought back into the case by the sellers, who were not parties to the agreement. In

---

Q: So before the e-mail?
A: Either the 15th or the 16th. I think we may have talked on the 16th.
Q: That's prior to the email?
A: Correct.
Q: So my question was, when was the next time after this e-mail that you spoke to him about the settlement?
A: *I did not speak to him about the settlement again until September of 2015. Yes, that would still be 2015.*
. . .
Q: Between the date of the June 17th e-mail and September of 2015, your testimony is there were no communications with Mr. Robbins about the settlement agreement at issue?
A: I believe it is the June 16th e-mail and that would be correct.
Q: I'm looking at June 17th.
A: June 17th? Oh, I apologize. You are right.
Q: When I use the word communications, that means there were no emails, phone calls or any other mode of communications about this case with Mr. Robbins?
A: That's correct.

(Emphasis added).

6

that email, counsel also remarked that "[a]s for getting the case wrapped up next week, I'm happy to do my best, but I am dealing with a carrier so . . . ."[6]

- June 26, 2015 at 4:54 p.m. – Counsel for co-defendant Palm Springs Town Homes emailed a revised proposed written settlement agreement ("First Revised Agreement") to all parties for review. Counsel wrote: "Once you all have blessed, I will convert this redline to a final document and re-circulate for signature."

- June 29, 2015 – Further revisions were made, and a second revised settlement agreement was circulated for approval ("Second Revised Agreement"). Counsel for co-defendant Palm Springs Town stated: "So provided that the revised releases meet with global approval, then I think we are ready to ink this deal. Please review and confirm we all can chase down our clients for signature."

- June 30, 2015 – In an email to Coscan's counsel, Vision's counsel raised an issue as to who would act as the escrow agent for the funds being received by the insurance company.

- July 1, 2015 at 8:08 p.m. – Coscan's counsel responded that he approves of David Rothstein acting in that capacity but defers to the carrier: "Ok with me if it's ok with the carrier."

- July 1, 2015 at 8:29 p.m. – Vision's counsel emailed Coscan's counsel and asked when the insurance carrier will confirm the settlement.

---

[6] According to her deposition testimony, Ms. Sidikman reviews the amount of the payment and the terms of the release when analyzing a settlement agreement.

> Q: What I want to know, if there is a settlement agreement that is proposed and it is written in final form, does the insurance company have to okay the final form before it can be signed off on by the insured?
>
> A: We would have to agree to the amount because we are going to be the entity paying the amount. And generally speaking I want to ensure that my insured is being protected by a release. The terms of the settlement agreement are what my insured has to live with. So they are really in control of the nonmonetary aspect.

- July 1, 2015 at 8:32 p.m. - In response, Coscan's counsel states that he is still waiting on the final approval of the settlement documents from the insurance company, writing that he "just need[s] her [Ms. Sidikman] to sign off on the language in the Settlement Agreement and they [the carrier] may have specific policies re: disbursement."

- July 7, 2015 – Vision's counsel sent another e-mail to follow up on the carrier's approval of the agreement, asking, "[h]ave you heard from the carrier on this?  I would like to get this signed as soon as we can."

- July 9, 2015 at 6:59 a.m. – Vision's counsel emailed Coscan's counsel the following: "The carrier has not approved or agreed [to] the proposed settlement deal at this point.  Given the [F]ourth's ruling, I have to withdraw [Vision's] consent to the proposed settlement agreement."[7]

- July 9, 2015 at 7:51 a.m. – Coscan's counsel responded, stating: "We have a settlement."

- July 9, 2015 at 7:52 a.m. – Vision's counsel replied stating: "I disagree at this point.  Your last email said the carrier hadn't approved it."

Here, no settlement was finalized prior to Vision withdrawing its consent.

While the parties engaged in preliminary negotiations, there was no enforceable settlement agreement because there was no assent by all of the parties to an agreement that was sufficiently specific and mutually agreeable as to every essential element.  Coscan's counsel maintained throughout the negotiations that the insurance carrier would need to sign off before any agreement could be finalized.  Thus, Coscan did not agree to the last of the proposed changes to the Second Revised

---

[7] The proposed settlement agreement contemplated payment to Vision of a portion of a final judgment totaling $2,038,909.00 in favor of Palm Springs Town Homes, LLC in a separate action if affirmed by the Fourth District Court of Appeal. However, in an opinion dated July 8, 2015, the Fourth District Court of Appeal reversed the trial court.  See Michael Anthony Co. v. Palm Springs Townhomes, 174 So. 3d 428 (Fla. 4th DCA 2015).

Agreement prior to Vision revoking its agreement to settle because the carrier still had not given its approval. See Gibson v. Courtois, 539 So. 2d 459, 460 (Fla. 1989) ("A mere offer not assented to constitutes no contract, for there must be not only a proposal, but an acceptance thereof. So long as a proposal is not acceded to, it is binding upon neither party, and it may be retracted." (quoting Etheredge v. Barkley, 6 So. 861, 862 (Fla. 1889))).

Ms. Sidikman took a leave of absence over the period of time when the bulk of the settlement negotiations occurred. It is undisputed that she had no contact with Coscan after June 17, 2015, which was early in the negotiations stage. It is also undisputed that Vision revoked its consent to settle on July 9, 2015. Thus, Coscan's contention that a final binding enforceable settlement was in place prior to Vision's revocation is unsupported by the facts.

Although settlement agreements are favored by the law and enforced whenever possible, there must still be a manifestation of mutual assent as to the essential settlement terms in order for the agreement to be enforceable. See Robbie, 469 So. 2d at 1385; see also Cheverie, 783 So. 2d at 1119. Courts apply an objective test to determine whether parties entered into an enforceable settlement agreement. See Gendzier v. Bielecki, 97 So. 2d 604, 608 (Fla. 1957) ("The making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs—not on the parties having meant the same thing but on their having said the same thing." (quoting Oliver Wendell Holmes, Dedication, The

9

Path of the Law, 10 Harv. L. Rev. 457 (1897))). As such, "we evaluate the existence of assent by analyzing the parties' agreement process in terms of offer and acceptance." Kolodziej v. Mason, 774 F.3d 736, 741 (11th Cir. 2014).

Here, the intent of the parties is objectively ascertainable through emails exchanged between counsel for the parties and the plain meaning of the settlement agreement language. Emails between counsel for Coscan, Vision, and co-defendant Palm Springs Town Homes demonstrate that Coscan intended the insurance carrier to first approve the Second Revised Agreement before the parties could sign the written document. Indeed, when Vision's counsel inquired as to when Coscan's carrier would give its final approval, Coscan's counsel responded, "I just need [the adjuster] to sign off on the language in the Settlement Agreement and they may have specific policies re: disbursement." Thus, Coscan explicitly intended for the insurance adjuster to first give its own approval before final execution of the agreement would occur. See Cheverie, 783 So. 2d at 1119 ("Where the language of a release is disputed and the parties fail to reach an agreement as to the character, nature, or type of release to be used, an essential element of the agreement is not established."). It is undisputed that Ms. Sidikman's last communication with Coscan's counsel was on June 17, 2015, well before the Second Revised Agreement was drafted and circulated. Thus, the carrier could not have given approval and consent. Because Coscan's decision to accept the Second Revised Agreement hinged on the carrier's approval and consent, there was no deal.

10

We now turn to the terms of the settlement agreement itself. Where the record establishes that the parties intended further action be taken prior to completion of a binding agreement, the agreement is not final. Williams v. Ingram, 605 So. 2d 890, 893 (Fla. 1st DCA 1992) (citing Albert v. Hoffman Elec. Constr. Co., 438 So. 2d 1015 (Fla. 4th DCA 1983)). In the instant case, Section 6 of the Second Revised Agreement unambiguously states: "The Effective Date shall be the date upon which the last signatory executes the Settlement Agreement." As such, the parties clearly intended for the agreement to become effective *only* upon execution by the last signatory.

Further, Section 2a outlines the timeframe for payment: "Within thirty days of the Effective Date of this Settlement Agreement, the Coscan Defendants shall pay or cause to be paid the sum of $275,000.00 . . . ." Thus, the signatures of all parties establish the effective date that triggers the thirty-day clock for the Coscan Defendants's payment of the funds. Without signatures, there is no effective date. Without an effective date, there is no obligation to pay. Accordingly, the trial court erred when it imposed its own effective date. See Platinum Luxury Auctions, LLC v. Concierge Auctions, LLC, 227 So. 3d 685, 688 (Fla. 3d DCA 2017) ("An order enforcing a settlement agreement must conform with the terms of the agreement and may not impose terms that were not included in the agreement." (quoting Johnson v. Bezner, 910 So. 2d 398, 401 (Fla. 4th DCA 2005))). Because Vision never signed

the proposed settlement agreement, the trial court's order enforcing the unexecuted agreement did not conform to the plain language of Section 6.

Finally, Coscan's contention that all essential terms had been agreed to, approved by the insurance adjuster, and that a binding contract existed fails because Section 6 would therefore be rendered superfluous in contradiction of basic contract law.  See Silver Shells Corp. v. St. Maarten at Silver Shells Condo. Ass'n, Inc., 169 So. 3d 197, 203 (Fla. 1st DCA 2015) ("[A] cardinal principle of contract interpretation is that the contract must be interpreted in a manner that does not render any provision of the contract meaningless."); Philip Morris Inc. v. French, 897 So. 2d 480, 488 (Fla. 3d DCA 2004) ("Courts are required to construe a contract as a whole and give effect, where possible, to every provision of the agreement.").

## IV.  CONCLUSION

Because we conclude, for the reasons set forth above, that no binding and enforceable settlement agreement existed between the parties, we reverse the trial court's order granting the Coscan Defendants' Motion to Enforce Settlement Agreement and remand for proceedings consistent herewith.

Reversed and remanded with instructions.

12